**CITY OF SAN DIEGO, a California municipal corporation, Plaintiff–Appellee,**

v.

**Christine Todd WHITMAN,\* an individual in her capacity as Administrator of the United States Environmental Protection Agency; United States Environmental Protection Agency, Defendants–Appellants.**

No. 00–56561.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2001

Filed March 13, 2001

---

\* Pursuant to Fed.R.App.P. 43(c), Christine Todd Whitman is automatically substituted as a party defendant-appellant for Carol Browner.

Martin F. McDermott, United States Department of Justice, Washington, D.C., for the defendants-appellants.

John R. Reese, McCutchen, Doyle, Brown & Enersen, Los Angeles, California, for the plaintiff-appellee.

Before: PREGERSON, CANBY, and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The United States Environmental Protection Agency ("EPA") appeals the district court's entry of a preliminary injunction in an action brought by the City of San Diego seeking judicial review, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, of a letter written by the EPA. The EPA's letter stated that it would apply the provisions of the Ocean Pollution Reduction Act of 1994 ("OPRA"), 33 U.S.C. § 1311(j), to the City's as-yet-unfiled application for renewal of a modified National Pollutant Discharge Elimination System ("NPDES") permit. The City characterizes this letter as "final agency action" and contends that it violates the intention of Congress that OPRA govern only the City's original application for a modified NPDES permit, not subsequent applications for renewal of that permit. The City argues that the application process is lengthy, complicated and costly, and that it needs a judicial determination, before it files its application for renewal of its modified NPDES permit, whether it will have to comply with the provisions of OPRA on an ongoing basis.

The district court concluded that the EPA's letter was subject to judicial review under the APA as "final agency action." The district court issued a preliminary injunction enjoining the EPA from enforcing a July 15, 2000 deadline for submission of the City's application for renewal of its modified NPDES permit until after the court conducted a bench trial and a decision in the case had become final following any appeal.

We have jurisdiction over the EPA's appeal of the district court's preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1). We conclude that the district court lacked subject matter jurisdiction because the EPA's letter did not constitute final agency action. We decline to consider the other issues raised in this appeal. We vacate the preliminary injunction, and remand the case to the district court with instructions to dismiss the City's underlying action.

## BACKGROUND

The City of San Diego operates the Point Loma Wastewater Treatment Plant, a publicly-owned wastewater treatment facility that discharges pollutants into the Pacific Ocean. The Clean Water Act ("CWA") prohibits such discharge except as authorized by a NPDES permit. *See* 33 U.S.C. § 1311(a); *Defenders of Wildlife v. Browner*, 191 F.3d 1159, 1163 (9th Cir. 1999). To receive a permit, the CWA requires that a publicly-owned wastewater treatment facility meet secondary treatment requirements. *See* 33 U.S.C. § 1311(b)(1)(B). In 1977, Congress amended the CWA to permit the EPA to modify the secondary treatment requirements for publicly-owned wastewater treatment facilities that discharge pollutants into ocean waters. *See* 33 U.S.C. § 1311(h) ("section 301(h)").

The City wanted to obtain the benefits of modified secondary treatment requirements for its Point Loma Wastewater Treatment Plant, but failed to submit an application for a section 301(h) modified permit by the deadline specified in 33 U.S.C. § 1311(j)(1)(A). In order to relieve

the City of the consequences of failing to comply with that deadline, Congress enacted special legislation authorizing the City to apply for a section 301(h) modified permit during a 180–day period beginning October 31, 1994. *See* OPRA, Pub.L. No. 103–431, 108 Stat. 4396, *codified at* 33 U.S.C. § 1311(j)(5). In order to take advantage of the revised deadline for submitting its application, OPRA required the City to: (1) commit to implement a wastewater reclamation program that would achieve a system capacity of 45 million gallons of reclaimed wastewater per day by January 1, 2010, (2) commit to implement a wastewater reclamation program that would result in a reduction in the quantity of suspended solids discharged by the City into the marine environment during the period of the modification, (3) show that modification would result in removal of not less than 80% of total suspended solids (on a monthly average) in the discharge of the wastewater plant, and (4) show that modification would result in removal of not less than 58% of the biological oxygen demand (on an annual average) in the discharge of the wastewater plant. *See* 33 U.S.C. § 1311(j)(5)(B) and (C).

Within the deadline imposed by OPRA, the City submitted an application for a section 301(h) modified permit. Pursuant to that application, on December 12, 1995, the EPA and the State of California issued a section 301(h) modified permit for the Point Loma facility, which incorporated the substantive requirements of OPRA.[1] This permit was due to expire December 15, 2000. An application for renewal of the modified permit was to be filed six months before the permit expired (June 15, 2000).[2] *See* 40 C.F.R. § 122.46; 40 C.F.R. § 125.59.

On December 13, 1999, the Mayor of the City of San Diego wrote to EPA Administrator Carol Browner "request[ing] your assistance regarding an issue impacting the City of San Diego's application for renewal of its National Pollutant Discharge Elimination System ('NPDES') permit for its Point Loma Wastewater Treatment Plant under the Clean Water Act." The Mayor stated:

> By law, the City of San Diego must submit a renewal application for its NPDES permit for Point Loma by June of 2000 (40 C.F.R. 122.46, 125.59)....

> As detailed below, the City's position is that OPRA was intended to govern the reopening of the waiver application window only. Once a permit is granted, the renewals are to be governed not by OPRA, but by the waiver regulations applicable to all dischargers. Given the obvious significance of this issue, and its impact on the nature and consideration of the application, it must be resolved before the City can file its renewal application....

> The City is presently developing the information necessary to submit its renewal application for Point Loma. EPA's interpretation of OPRA is of obvious and primary importance to the effort, as it will dictate how the City must proceed towards renewal of its permit. In the absence of this determination, the City will be faced with the prospect of submitting dual and inconsistent renewal applications, which will not only be wasteful, but will also wreak havoc on the City's wastewater programmatic and financial planning efforts.

On February 17, 2000, the EPA Regional Administrator for Region IX responded to the Mayor's request for assistance in a letter stating that, "[a]fter thorough review of this question with the Offices of Regional Counsel and General Counsel, EPA interprets the OPRA conditions to continue in effect upon application for renewal of the City's 301(h) modified per-

---

**1.** The State of California is authorized to issue NPDES permits for point source dischargers within its jurisdiction. The EPA, however, issues permit modifications under OPRA and 33 U.S.C. § 1311(h) and (j). Accordingly, the City's NPDES permit, which included modifi-

cations under OPRA, was jointly issued by the State of California and the EPA.

**2.** The EPA granted an extension of the application deadline to July 15, 2000.

mit." The Regional Administrator further stated:

> I encourage the City to submit its application for renewal of its 301(h) modified permit promptly and in accordance with OPRA. I assure you that EPA Region IX will give fair and timely consideration to the City's renewal application. In addition, like all other EPA actions on 301(h) modified permit applications, Region IX's action on the City's application will be subject to review by the Environmental Appeals Board ("EAB") once Region IX makes its decision on the City's application for renewal of the 301(h) modified permit. If the City bases its application on its own interpretation of the applicability of OPRA conditions, the City could raise the OPRA issue in an appeal to the EAB. This letter, however, cannot constitute "final agency action" for purposes of obtaining judicial review. Final agency action occurs upon completion of the permit appeal process described above.

Instead of filing an application for renewal of its modified permit, the City filed the present action in district court. The City sought judicial review under the Administrative Procedure Act, 5 U.S.C. § 704, of the EPA's letter stating that OPRA was intended to apply not only to the City's original application for a section 301(h) modified permit, which Congress permitted to be filed late, but also to all subsequent applications for renewal of the modified permit.[3] The City alleged that

the EPA's letter constituted "final agency action." The City also alleged that the letter constituted rule-making undertaken without notice and public comment.[4]

The EPA moved to dismiss the City's complaint for lack of subject matter jurisdiction. The EPA argued that its letter was not "final agency action;" that the dispute was not ripe for review; that the City had not exhausted its administrative remedies; and that 33 U.S.C. § 1369(b)(1) vested exclusive jurisdiction over EPA decisions related to NPDES permits in the United States Courts of Appeals.

The district court denied the EPA's motion to dismiss for lack of subject matter jurisdiction. It determined that the EPA's letter "constitute[d] a final action reviewable in this court because it constitute[d] Defendants' definitive position on the applicability of 33 U.S.C. § 1311(j)(5), and create[d] immediate and direct adverse effects on Plaintiff." The court also determined that the letter was ripe for review because judicial intervention would not interfere with administrative action, the issue was a question of law, and delay would cause substantial hardship to the City. Finally, the court concluded that the doctrine of exhaustion of administrative remedies did not bar the City's suit, nor was jurisdiction to review the EPA's action vested solely in the Court of Appeals, because the EPA's letter did "not constitute either the approval of an 'effluent limitation or other limitation' or the issuance or denial of a permit" under 33 U.S.C. § 1369(b)(1).[5]

---

3. The City's complaints with the application of OPRA to its application for renewal are detailed in a declaration of the Deputy Director of the Metropolitan Operations and Maintenance Division of the Metropolitan Wastewater Department. The Deputy Director states that: (1) the City currently spends $1,000,000 per year to comply with OPRA's requirement of removing 58% of biological oxygen demand on an annual average; (2) the City cannot continue to comply with OPRA's conditions due to estimated population growth; (3) the City will be forced to retrofit its facilities in order to attain secondary treatment standards and the advanced primary facilities at the Point Loma plant will be rendered obsolete; and (4) the OPRA con-

ditions do not benefit the environment and constitute wasteful overtreatment.

4. The City also sought declaratory relief and a writ of mandamus compelling the EPA to apply the requirements under 33 U.S.C. § 1311(h)(1)-(9) to its application for renewal of its section 301(h) modified permit. The parties do not dispute that jurisdiction over these claims turns on whether the EPA's letter constituted final agency action under the Administrative Procedure Act.

5. The district court also ruled that the EPA's letter did not amount to rule-making subject to notice and comment.

The district court denied the City's motion for summary judgment on the ground that "there are material issues in dispute as to the correct interpretation of 33 U.S.C. § 1311(j)(5)," and set the case for trial. The court granted the City's motion for a preliminary injunction, enjoining the EPA from "enforcing the July 15, 2000 deadline for submission of an application for renewal of [the City's] NPDES permit and the section 301(h) waiver therein and otherwise from taking any action on such submission until 90 days after final judgment on all claims in [the City's] complaint, including all appeals thereof."

The EPA appeals the district court's preliminary injunction. Its principal argument on appeal is that its letter did not constitute "final agency action" and thus the district court lacked subject matter jurisdiction.

## DISCUSSION

### A. Standard of Review

■ We review de novo the question of subject matter jurisdiction. *See Ecology Ctr., Inc. v. United States Forest Serv.*, 192 F.3d 922, 924 (9th Cir.1999).

### B. Final Agency Action

The APA provides for judicial review of "final agency action." 5 U.S.C. § 704. In *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), the United States Supreme Court stated that two criteria must be satisfied for agency action to be final:

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."

*Id.* at 177–78, 117 S.Ct. 1154 (internal citations omitted).

■ The EPA's letter does not satisfy the first of the *Bennett v. Spear* requirements for final agency action-that the action mark the "'consummation' of the agency's decisionmaking process." *Id.* The EPA's decision-making process on the City's application for renewal of its section 301(h) modified permit will not even begin until the City files its application. If and when the City is aggrieved by the EPA's decision regarding its application, the City's recourse is to appeal to the Environmental Appeals Board ("EAB"), as a prerequisite to review by this court. *See* 33 U.S.C. § 1369(b)(1); 40 C.F.R. § 124.19(e) ("A petition to the Environmental Appeals Board under paragraph (a) of this section is, under 5 U.S.C. § 704, a prerequisite to the seeking of judicial review of the final agency action.").

■ It is the EAB's decision that will constitute the "consummation of the agency's decision-making process." This point is made in the EPA's letter itself: "This letter, however, cannot constitute 'final agency action' for purposes of obtaining judicial review. Final agency action occurs upon completion of the permit appeal process described above."[6] The letter described the appeal process and made it clear that the decision of the EAB would represent the consummation of the decision-making process on the issue of whether the City's application for renewal of its section 301(h) modified permit should be governed by OPRA or by the regulations applicable to all dischargers. Until the administrative appeal process is completed, judicial review is premature. *See Sierra Club v. United States Nuclear Regulatory Comm'n*, 825 F.2d 1356, 1362 (9th Cir.1987) ("We will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely

---

**6.** Although an agency's own characterization of its action as non-final is not necessarily determinative, it provides an indication of the nature of the action. *See Blincoe v. FAA*, 37 F.3d 462, 464 (9th Cir.1994) (per curiam).

unnecessary."). *Cf. Queen in Right of Ontario v. EPA,* 912 F.2d 1525, 1532 (D.C.Cir.1990) (agency action was final because it was "unambiguous and devoid of any suggestion that it might be subject to subsequent revision"); *Ciba–Geigy Corp. v. EPA,* 801 F.2d 430, 436–37 (D.C.Cir. 1986) (agency action was final because "[n]ot only did the statement of position admit of no ambiguity, but it gave no indication that it was subject to further agency consideration or possible modification.") (internal citation omitted).[7]

■ The EPA's letter also fails to satisfy the second requirement of the *Bennett v. Spear* finality test—that the agency action impose an obligation, deny a right or fix some legal relationship. *See Bennett,* 520 U.S. at 178, 117 S.Ct. 1154; *Association of Am. Med. Colleges v. United States,* 217 F.3d 770, 780–81 (9th Cir.2000). The EPA's letter simply responds to the City's request for "assistance" on the issue of whether it can expect the EPA to apply OPRA's conditions to its application for renewal of its section 301(h) modified permit. The letter only "encourage[s]" the City to submit its application in accordance with the EPA's interpretation of OPRA and informs the City that it can raise the OPRA issue on appeal to the EAB if it chooses to complete the application in accordance with its own interpretation of OPRA.

*C. Conclusion*

Because the letter fails the finality test of *Bennett v. Spear,* it does not constitute "final agency action" required for judicial review under the Administrative Procedure Act, 5 U.S.C. § 704. The district court lacked subject matter jurisdiction. We need not consider the EPA's other challenges to subject matter jurisdiction. The preliminary injunction is vacated and this case is remanded to the district court

with instructions to dismiss the City's underlying action.

Issuance of this court's mandate is stayed for thirty days from the filing of this opinion, and in the event any petition for rehearing is filed, issuance of the mandate is further stayed until a decision on all petitions for rehearing becomes final.

**VACATED and REMANDED.**

---

7. The EPA also argues that the letter represents only the "regional administrator's opinion." This argument is unpersuasive. The letter clearly states that "After a thorough review of this question with the Offices of Regional Counsel and General counsel, *EPA interprets* the OPRA conditions to continue in effect upon application for renewal of the City's section 301(h) modified permit." (Emphasis added.)