# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FAIRBANKS NORTH STAR BOROUGH,
*Plaintiff-Appellant,*

v.

U.S. ARMY CORPS OF ENGINEERS;
JOHN W. PEABODY; KEVIN J.
WILSON,
*Defendants-Appellees.*

No. 07-35545

D.C. No.
CV-06-00026-F-
RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
August 4, 2008—Anchorage, Alaska

Filed September 12, 2008

Before: Dorothy W. Nelson, A. Wallace Tashima and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

**COUNSEL**

Joseph W. Miller, Fairbanks North Star Borough, Fairbanks, Alaska; James S. Burling and Damien M. Schiff (argued), Pacific Legal Foundation, Sacramento, California, for the plaintiff-appellant.

Ronald J. Tenpas, Acting Assistant Attorney General, Steven E. Rusak, Ellen J. Durkee, Aaron P. Avila and Robert H. Oakley (argued), Attorneys, United States Department of Justice,

Environmental and Natural Resources Division, Washington, DC; Toni B. London, United States Army Corps of Engineers, Office of Counsel, for the defendants-appellees.

## OPINION

FISHER, Circuit Judge:

The Clean Water Act ("CWA") makes it unlawful to discharge dredged and fill material into the waters of the United States except in accord with a permitting regime jointly administered by the Army Corps of Engineers ("Corps") and the Environmental Protection Agency ("EPA"). *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123 (1985). Fairbanks North Star Borough ("Fairbanks") seeks judicial review of a Corps' "approved jurisdictional determination," which is a written, formal statement of the agency's view that Fairbanks' property contained waters of the United States and would be subject to regulation under the CWA. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's dismissal on the pleadings for lack of jurisdiction. The Corps' approved jurisdictional determination is not final agency action within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.

## BACKGROUND[1]

"The burden of federal regulation on those who would deposit fill material in locations denominated 'waters of the United States' is not trivial." *Rapanos v. United States*, 547 U.S. 715, 721 (2006) (plurality opinion). Under the CWA, "any discharge of dredged or fill materials into . . . 'waters of

---

[1]On review of a judgment on the pleadings, we "accept all material allegations in the complaint as true and construe them in the light most favorable to [the non-moving party]." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (internal quotation marks omitted and alterations in original).

the United States'[ ] is forbidden unless authorized by a permit issued by the Corps of Engineers pursuant to" Section 404 of the CWA, which is codified at 33 U.S.C. § 1344. *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1391 (9th Cir. 1995); *see also Riverside Bayview*, 474 U.S. at 123; *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 646 (9th Cir. 2007). "The Corps has issued regulations defining the term 'waters of the United States,' " *Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 163 (2001), to include most wetlands adjacent to waters of the United States that are not themselves wetlands, *see* 33 C.F.R. § 328.3(a)(7).

Fairbanks wishes to develop a 2.1 acre tract of property for its residents' recreational use. It intends to build "playgrounds, athletic fields, concession stands, restrooms, storage buildings, road[s], and parking lots," the construction of which will "include the placement of fill material." In October 2005, Fairbanks wrote to the Corps to "ask[ ] for [its] review and determination" that it could place fill material on its property without further ado. It asked the Corps to "provide a detailed, scaled drawing showing the . . . wetlands in relation to the lot boundaries." The Corps thereafter issued a "preliminary" jurisdictional determination finding that Fairbanks' entire parcel contained wetlands. Fairbanks then requested that the Corps provide an "approved" jurisdictional determination. In December 2005, the Corps obliged Fairbanks and replied:

> Based on our review of the information you furnished and available to our office, we have determined that the entire parcel described above contains waters of the United States . . . under our regulatory jurisdiction . . . . This approved jurisdictional determination is valid for a period of five (5) years . . . unless new information supporting a revision is provided to this office . . . .

The Corps' letter went on to remind Fairbanks that "Section 404 of the Clean Water Act requires that a [ ] permit be obtained for the placement or discharge of dredged and/or fill material into waters of the U.S., including wetlands, prior to conducting the work." Fairbanks took a timely administrative appeal of the approved jurisdictional determination, which the Corps found to be without merit in May 2006. Fairbanks has not since applied for a Section 404 permit. Nor has the Corps initiated any pre-enforcement or enforcement action.

In August 2006, Fairbanks brought this suit to set aside the Corps' approved jurisdictional determination. According to Fairbanks, the Corps acted unlawfully in asserting that its property was subject to CWA regulatory jurisdiction. Fairbanks contended that its property could not possibly be a wetland because it is "underlain by shallow permafrost at a depth of 20 inches" that does not "exceed zero degrees Celsius at any point during the calendar year." A Corps regulation, which is not challenged here, provides that:

> The term wetlands means those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions.

33 C.F.R. § 328.3(b). To identify wetlands under this regulation, the Corps uses its 1987 Wetlands Delineation Manual ("Manual"). *See* Energy and Water Development Appropriations Act, Pub. L. No. 102-377, 106 Stat. 1315, 1324 (1992); *United States v. Deaton*, 332 F.3d 698, 712 (4th Cir. 2003).

The Manual explains that wetlands have the three "general diagnostic environmental characteristics" of vegetation, soil and hydrology. Manual ¶ 26(b). Generally, "evidence of a minimum of one positive wetland indicator from each parameter (hydrology, soil, and vegetation) must be found in order

to make a positive wetland determination." *Id.* ¶ 26(c). Fairbanks alleged that its property lacks wetlands hydrology, because it is not "periodically inundated" and does not have "saturated soils during the growing season." *Id.* ¶ 46. The Manual defines "growing season" as "[t]he portion of the year when soil temperatures at 19.7 in. below the soil surface are higher than biologic zero (5° C)" and notes that "[f]or ease of determination this period can be approximated by the number of frost-free days." *Id.* at App. A. Fairbanks asserted that the Corps' jurisdictional determination improperly relied on a special definition of "growing season," which Fairbanks calls the "Alaska Rule," inconsistent with the Manual's definition. The Alaska Rule states that the frost-free period based on a "28 degree air temperature" best fits the "observed growing season in most parts of [Alaska]." *See* Army Corps of Engineers, Alaska District, Special Public Notice 03-05 (July 25, 2003). By using the Alaska Rule, Fairbanks claimed, the Corps could establish a growing season even when a property is underlain by shallow permafrost, and never has a subsurface soil temperature higher than biologic zero.[2] Consequently, the Corps' finding that Fairbanks' property was a wetland subject to CWA regulatory jurisdiction was erroneous.

The district court granted the Corps' motion for judgment on the pleadings, concluding that the approved jurisdictional determination did not constitute final agency action under the APA, that Fairbanks' challenge was unripe and that the CWA statutorily precluded judicial review. Fairbanks timely appealed.

---

[2]Fairbanks concedes that the Corps' rescission of the Alaska Rule in March 2006 moots its claim that the Alaska Rule was promulgated without compliance with the APA's notice-and-comment procedures and does not challenge the district court's entry of judgment as to that claim.

## STANDARD OF REVIEW

"We review a judgment dismissing a case on the pleadings de novo." *Dunlap v. Credit Prot. Ass'n., L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (per curiam). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted). "We review de novo the district court's determination that it lacked subject matter jurisdiction. We therefore do not defer to the agency's position on whether agency action is final." *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 979 n.1 (9th Cir. 2006) (internal citations omitted).

## DISCUSSION

[1] As a matter of first impression, we hold that the Corps' issuance of an approved jurisdictional determination finding that Fairbanks' property contained waters of the United States did not constitute final agency action under the APA for purposes of judicial review.[3] "As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted). The approved jurisdictional determination represented the Corps' definitive administrative position that Fairbanks' property contained wetlands. But, as we shall explain, it did not " 'im-

---

[3]This question has not been addressed by any published decision of the courts of appeals. *See Greater Gulfport Prop., LLC v. U.S. Army Corps of Eng'rs*, 194 F. App'x 250 (5th Cir. 2006) (unpublished) (holding that district court lacked jurisdiction to review Corps' approved jurisdictional determination); *Comm'rs of Pub. Works v. United States*, 30 F.3d 129 (4th Cir. 1994) (unpublished) (same).

pose an obligation, deny a right, or fix some legal relationship.' " *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). Because finality is a jurisdictional requirement to obtaining judicial review under the APA, the district court correctly dismissed Fairbanks' action. *See Or. Natural Desert Ass'n*, 465 F.3d at 982. We do not reach the issues of ripeness and statutory preclusion of judicial review.

# I.

We agree with Fairbanks that an approved jurisdictional determination upheld in the Corps' administrative appeal process "mark[s] the consummation of the agency's decision-making process" for determining whether the Corps conceives a property as subject to CWA regulatory jurisdiction. There is no question that the Corps has asserted its ultimate administrative position regarding the presence of wetlands on Fairbanks' property "on the factual circumstances upon which the [determination is] predicated[.]" *See Alaska Dep't of Envtl. Conservation v. EPA*, 244 F.3d 748, 750 (9th Cir. 2001) ("*Alaska I*"); *see also Alaska Dep't of Envtl. Conservation v. EPA*, 298 F.3d 814, 818 (9th Cir. 2002), *aff'd* 540 U.S. 461, 483 (2004) ("*Alaska II*"). The approved jurisdictional determination states on its face that it "is valid for a period of five (5) years" and that the Corps' position would change only if "new information supporting a revision is provided."[4] It is

---

[4]*Alaska I* forecloses the Corps' contention that an approved jurisdictional determination cannot satisfy *Bennett*'s first prong because the Corps might alter its position if the physical condition of Fairbanks' property changed. We had no difficulty there regarding the EPA's findings as its "last word" about the contested issue because the agency's position was "unalterable": it "would change only if the circumstances surrounding the [generator's construction] changed." *Alaska I*, 244 F.3d at 750; *see also Gen. Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002) ("If the possibility . . . of future revision in fact could make agency action non-final as a matter of law, then it would be hard to imagine when any agency rule . . . would ever be final . . . .").

"devoid of any suggestion that it might be subject to subsequent revision" or "further agency consideration or possible modification." *See City of San Diego v. Whitman*, 242 F.3d 1097, 1102 (9th Cir. 2001) (quoting *Ontario v. EPA*, 912 F.2d 1525, 1532 (D.C. Cir.1990), and *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 436-37 (D.C. Cir. 1986)).

**[2]** By regulation, the Corps has established a formal procedure for "[a]ffected part[ies]" to solicit its official position about the scope of CWA regulatory jurisdiction. *See* 33 C.F.R. § 331.2. A jurisdictional determination is a "written Corps determination that a wetland . . . is subject to regulatory jurisdiction under [the CWA]." *Id.*; *see also* Jurisdictional Determinations, Corps Regulatory Guidance Letter 08-02, at 1 (June 26, 2008) ("An approved [jurisdictional determination] is an official Corps determination that jurisdictional [waters under the CWA] are either present or absent on a particular site."). After the district engineer's approved jurisdictional determination has been upheld by the division engineer, no further administrative appeal is possible. *See* 33 C.F.R. § 331.9.[5] At that point, the approved jurisdictional determination is deemed to be "final *Corps* agency action" and a "final *Corps* decision" for administrative purposes. *Id.* § 320.1(a)(2), (a)(6) (emphasis added).[6] The regulations thus

---

[5]With limited exceptions, the Corps' district engineers are authorized to "issue formal determinations concerning the applicability of the Clean Water Act . . . to . . . tracts of land . . . ." 33 C.F.R. § 320.1(a)(6); *but cf. id.* § 325.9. The district engineer's jurisdictional determination is subject to administrative appeal. *Id.* § 320.1(a)(2). In determining the appeal, the reviewing officer is to "conduct an independent review of the administrative record to address the reasons for the appeal cited by" the appellant. *Id.* § 331.3(b)(2). The reviewing officer must render a decision within 12 months of the filing of a request for appeal, *id.* § 331.8, "document his decision on the merits of the appeal in writing," *id.* § 331.9(b), and file it "in the administrative record for the project," thereby concluding the administrative appeal process, *id.* § 331.9(c).

[6]An agency's characterization of its own action as final is not "determinative" of our own finality analysis under the APA, *Blincoe v. FAA*, 37

delimit the stopping point of the Corps' decisionmaking process for the issuance and review of jurisdictional determinations. An approved jurisdictional determination upheld on administrative appeal is the agency's "last word" on whether it views the property as a wetland subject to regulation under the CWA. *See Sierra Club v. U.S. NRC*, 825 F.2d 1356, 1362 (9th Cir. 1987). No further agency decisionmaking on that issue can be expected, a clear indication that the first prong of the *Bennett* finality test is satisfied. *See id.*

The Corps argues that an approved jurisdictional determination merely helps parties "determine where they stand on potential permitting issues" and "necessarily entails the possibility of further administrative proceedings," like permit applications. As such, the determination is "only [a] step[ ] leading to an agency decision, rather than the final action itself." *See Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th Cir. 1999). Fairbanks correctly responds that this argument "conflate[s] one . . . decision with a future yet distinct administrative process." The Corps' regulations throughout treat jurisdictional determinations and permitting decisions as discrete agency actions.[7] Notably, jurisdictional determinations "do not include determinations that a particular activity requires a . . . permit." 33 C.F.R. § 331.2. The

---

F.3d 462, 464 (9th Cir. 1994) (per curiam), though it does "provide[ ] an indication of the nature of the [agency's] action," *City of San Diego*, 242 F.3d at 1101 n.6. The Corps has expressly declined to address "in . . . rulemaking when a [jurisdictional determination] should be considered a final agency action" for purposes of judicial review. *See* Final Rule Establishing an Administrative Appeal Process for the Regulatory Program of the Corps of Engineers, 65 Fed. Reg. 16,486, 16,488 (Mar. 28, 2000).

[7]*See, e.g.*, 33 C.F.R. § 331.2 (identifying approved jurisdictional determinations, permit denials and declined permits as categories of "appealable action[s]"); *id.* § 331.3(a)(1) (allowing division engineer to delegate authority when reviewing jurisdictional determinations, but not permit decisions); *see also* Corps Regulatory Guidance Letter 08-02, at 2-3 (explaining that approved jurisdictional determination need not be secured before initiating permitting process).

Corps' reliance on *City of San Diego* is misplaced in view of the agency's provision of a formal procedure for acquiring its settled views about the scope of CWA jurisdiction outside of and apart from the permitting process. *Cf. City of San Diego*, 242 F.3d at 1101 (reasoning that letter did not mark consummation of decisionmaking process because it was only "upon completion of the permit appeal process" that agency would decide applicability of statute). That Fairbanks might later decide to initiate some *other* Corps process after obtaining the approved jurisdictional determination does not detract from the definiteness of the determination itself.

**[3]** An approved jurisdictional determination announces the Corps' considered, definite and firm position about the presence of jurisdictional wetlands on Fairbanks' property at the time it is rendered. Accordingly, we conclude that it marks the consummation of the agency's decisionmaking process as to that issue.

## II.

**[4]** Although Fairbanks is correct that the first *Bennett* requirement is satisfied, the second is not. We hold that the Corps' approved jurisdictional determination finding that Fairbanks' property contained wetlands subject to CWA regulatory jurisdiction is not an "action . . . by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " *Bennett*, 520 U.S. at 178; *see also Or. Natural Desert Ass'n*, 465 F.3d at 987 (examining "whether [challenged action] has any legal effect that would qualify it as a final agency action under *Bennett*'s second finality requirement"). From this it follows that judicial review under the APA is unavailable.

**[5]** Fairbanks' rights and obligations remain unchanged by the approved jurisdictional determination. It does not itself command Fairbanks to do or forbear from anything; as a bare statement of the agency's opinion, it can be neither the subject

of "immediate compliance" nor of defiance. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 239-40 (1980). Up to the present, the Corps has "expresse[d] its view of what the law requires" of Fairbanks without altering or otherwise fixing its legal relationship. *See AT&T v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001). This expression of views lacks the "status of law or comparable legal force." *See Ukiah Valley Med. Ctr.*, 911 F.2d at 264.[8] In any later enforcement action, Fairbanks would face liability only for noncompliance with the CWA's underlying statutory commands, not for disagreement with the Corps' jurisdictional determination. *See* 33 U.S.C. § 1319(b)-(c), (g) (providing criminal, civil and administrative penalties for violation of the CWA, but not referring to approved jurisdictional determinations); *cf. Tenn. Valley Auth. v. Whitman*, 336 F.3d 1236, 1255-57 (11th Cir. 2003) (reasoning that Clean Air Act compliance orders have status of law because statute "undeniably authorizes[s] . . . penalties based solely upon noncompliance" with them).

[6] At bottom, Fairbanks has an obligation to comply with the CWA. If its property contains waters of the United States, then the CWA requires Fairbanks to obtain a Section 404 discharge permit; if its property does not contain those waters, then the CWA does not require Fairbanks to acquire that permit. In either case, Fairbanks' legal obligations arise directly and solely from the CWA, and not from the Corps' issuance of an approved jurisdictional determination. *See Gallo Cattle Co. v. USDA*, 159 F.3d 1194, 1199 (9th Cir. 1998) (agency

---

[8]*Cf., e.g.*, *Alaska II*, 540 U.S. at 481 n.10 ("[T]he *stop-construction order* imposed 'new legal obligations' . . . .") (emphasis added); *Pub. Util. Dist. No. 1 of Snohomish County v. Bonneville Power Admin.*, 506 F.3d 1145, 1152 (9th Cir. 2007) ("[T]hey created *new* benefits and obligations . . . .") (emphasis added); *Or. Natural Desert Ass'n*, 465 F.3d at 985 n.10 (recognizing "substantive legal constraints imposed" by the challenged agency action); *Alaska I*, 244 F.3d at 750 (explaining that the parties bringing suit "would be subject to criminal and civil penalties for the violation of [the agency's orders], *as well as* for the violation of the" Clean Air Act itself) (emphasis added).

decision not final agency action because potential legal consequences flowed only from the plaintiff's "disregard of its statutory obligation"). Whether Fairbanks' property is a jurisdictional wetland (i.e., contains waters of the United States) depends on its "vegetation, soil and hydrology" — the land is what and where it is. The Corps does not alter that physical reality or the legal standards used to assess that reality simply by opining that a particular site contains waters of the United States. *See Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 16 (D.C. Cir. 2005) (agency action that "left the world just as it found it . . . cannot be fairly described as implementing, interpreting, or prescribing law or policy") (internal quotation marks omitted).

In withholding judicial review of the Corps' approved jurisdictional determination, we do not impair Fairbanks' ability to contest the existence of CWA regulatory jurisdiction. *See Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 647 (9th Cir. 2005); *see also Nat'l Ass'n of Home Builders*, 415 F.3d at 15. It is settled law that the federal courts have the final say on the scope of the CWA.[9] In exercising that authority, we would not give the government's position that CWA regulatory jurisdiction exists any particular deference simply because the Corps' views on the matter were formulated in the context of an approved jurisdictional determination rather than, for example, a permit application or enforcement proceeding.

Despite all this, Fairbanks urges that the Corps' approved jurisdictional determination has three legal consequences: it

---

[9]*See, e.g.*, *Baccarat Fremont Developers, LLC v. U.S. Army Corps of Eng'rs*, 425 F.3d 1150, 1153 (9th Cir. 2005) (reviewing CWA regulatory jurisdiction in context of challenge to discharge permit's mitigation requirements); *United States v. Phillips*, 367 F.3d 846, 854-55 (9th Cir. 2004) (reviewing CWA regulatory jurisdiction in context of motion to dismiss indictment); *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 533 (9th Cir. 2001) (reviewing CWA regulatory jurisdiction in context of citizen suit).

prevents Fairbanks from claiming in mitigation that it had acted with good faith; it effectively requires Fairbanks to submit to the CWA's permitting regime before proceeding with construction; and it deprives Fairbanks of a "negative" jurisdictional determination, which might have been relied upon as a defense to enforcement action.[10] We do not consider these arguments persuasive and shall address each in turn.

[7] "In determining the amount of a civil penalty the court shall consider . . . any *good-faith* efforts to comply with the applicable requirements [of the CWA] . . . ." 33 U.S.C. § 1319(d) (emphasis added). As even the Corps recognizes, an approved jurisdictional determination could "eventually be evidence on the issue of whether a particular course of conduct was undertaken in good or bad faith." But the possibility that Fairbanks might someday face a greater risk of increased fines should it proceed without regard to the Corps' assertion of jurisdiction does not constitute a *legal* consequence of the approved jurisdictional determination. *Cf. City of Fremont v. FERC*, 336 F.3d 910, 914 (9th Cir. 2003) ("Because the FERC orders attach *legal* consequences to the future . . . pro-

---

[10]Fairbanks also contends that an approved jurisdictional determination is judicially reviewable like an interpretive rule that has a "substantial impact on the rights of individuals," *Am. Postal Workers Union v. U.S. Postal Serv.*, 707 F.2d 548, 560 (D.C. Cir. 1983), or the denial of a permit authorizing an otherwise proscribed activity, *John Doe, Inc. v. DEA*, 484 F.3d 561, 566-67 (D.C. Cir. 2007). These arguments assume the desired conclusion: such agency actions are judicially reviewable only insofar as they have tangible legal consequences or otherwise alter the legal relationship between the parties. *See Oregon v. Ashcroft*, 368 F.3d 1118, 1120 (9th Cir. 2004) (holding that interpretive rule "is a final determination for jurisdictional purposes because the rule impos[es] obligations and sanctions in the event of violation [of its provisions]") (internal quotation marks omitted and alteration in original). By contrast, the Corps' approved jurisdictional determination imposes no new or additional legal obligations on Fairbanks. It at most "simply 'reminds' affected parties of existing duties" imposed by the CWA itself and commands nothing of its own accord. *See Citizens to Save Spencer County v. EPA*, 600 F.2d 844, 876 n.153 (D.C. Cir. 1979).

ceedings, they satisfy the finality prong of our analysis.") (emphasis added). Section 1319(d) does not mention jurisdictional determinations, much less assign them any particular evidentiary weight; thus, any difficulty Fairbanks might face in establishing good faith flows not from the *legal* status of the Corps' determination as agency action, but instead from the *practical* effect of Fairbanks having been placed on notice that construction might require a Section 404 permit. *See Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798, 811 (D.C. Cir. 2006); *Nat'l Ass'n of Home Builders*, 415 F.3d at 15. The Corps' approved jurisdictional determination has no more legal effect on Fairbanks' ability eventually to assert a good faith defense than would, for example, a report by a private wetlands consultant informing Fairbanks that its property contained wetlands.

[8] Fairbanks' second argument, that the Corps' approved jurisdictional determination "as much as requires" and "makes [Fairbanks] subject to the CWA permitting regime, an onerous administrative maze," likewise erroneously conflates a potential *practical* effect with a *legal* consequence.[11] We do

---

[11]We appreciate that navigating the CWA permitting process is no small task. *See Rapanos*, 547 U.S. at 721 (plurality opinion) ("The average applicant for an individual permit spends 788 days and $271,596 in completing the process, and the average applicant for a nationwide permit spends 313 days and $28,915 . . . ."). Yet, we must keep in mind that these are the costs of statutory compliance with the CWA. Whether or not it has an approved jurisdictional determination in hand, the owner of land that contains waters of the United States must bear those costs. Because any legal obligation to undergo the CWA permitting process does not arise from the Corps having expressed its view that Fairbanks' property is a wetland, we do not reach the Corps' argument that agency action requiring a party to participate in further agency proceedings is characteristically non-final. *Compare Hecla Mining Co. v. EPA*, 12 F.3d 164 (9th Cir. 1993) (EPA's decision to list mine as "point source[ ] discharging toxic pollutants that are responsible for impairing the achievement of water quality standards" not final agency action because it "serve[d] only to initiate proceedings" and required no action on mine's part until permitting process complete), *with Hawaiian Elec. Co. v. EPA*, 723 F.2d 1440, 1442-43 (9th Cir. 1984) (EPA's determination that generator's proposed fuel change constituted a "major modification" was final agency action because it required use of more rigorous "major modification" PSD permit review).

agree that now that Fairbanks is on the Corps' radar screen, it is at least plausible that the probability of enforcement action if Fairbanks proceeds with construction without securing a Section 404 permit is greater than it was before it requested an approved jurisdictional determination. Not every agency "decision . . . [that] has immediate financial impact," or even "profound [economic] consequences" in the real world, is final agency action, however. *See Indus. Customers of Ne. Util.*, 408 F.3d at 646-47. Whatever Fairbanks now chooses to do, it will be no more or less in violation of the CWA than if it had never requested an approved jurisdictional determination. The approved jurisdictional determination did not augment the Corps' legal authority to pursue enforcement action. To the contrary, Fairbanks' legal obligations — including any obligation to pursue a Section 404 dredge and fill material discharge permit — have always arisen solely on account of the CWA. *See Gallo Cattle*, 159 F.3d at 1199.

[9] Fairbanks' final point is a non sequitur. It contends that because a Corps determination that a property does *not* contain "waters of the United States" has legal consequences, a Corps determination that a property *does* contain jurisdictional waters likewise has legal consequences.[12] Implicit in Fairbanks' argument is the dubious premise that if an agency's decisionmaking process has multiple outcomes and *any* of these outcomes is judicially reviewable, then *all* of them

---

[12]Fairbanks may be correct that an official Corps statement that a property is *not* a jurisdictional wetland subject to the CWA's permitting requirements could be the basis for an estoppel defense. When an authorized government official tells the defendant that a course of action is legal and the defendant reasonably relies to its detriment on that erroneous representation, then fairness and due process may prohibit the state from punishing the defendant for that unlawful conduct. *See United States v. Brebner*, 951 F.2d 1017, 1024-25 (9th Cir. 1991); *United States v. Tallmadge*, 829 F.2d 767, 773 (9th Cir. 1987). Courts have recognized that finality can result "if the language of the document is such that private parties can rely on it as a . . . safe harbor by which to shape their actions." *Gen. Elec. Co. v. EPA*, 290 F.3d at 383 (internal quotation marks omitted).

must be judicially reviewable. We have not been directed to any authority recognizing this as a principle of administrative law. Unsurprisingly so: the law is replete with situations when the availability of judicial review turns on the effect of the agency's particular decision. Agency action that does not cause injury in fact is not judicially reviewable due to lack of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). And agency action that does not "impose an obligation, deny a right, or fix some legal relationship" is not judicially reviewable due to lack of finality. *Ukiah Valley Med. Ctr.*, 911 F.2d at 264. Whether a Corps finding that a property is not subject to regulatory jurisdiction under the CWA would constitute final agency action is beside the point here, where Fairbanks seeks judicial review of a Corps' finding that its property is subject to CWA regulatory jurisdiction. A negative finding would effectively assure Fairbanks that the Corps would not later be able to fault Fairbanks' failure to seek a permit. The affirmative finding simply puts Fairbanks on notice that the Corps believes a permit is necessary if Fairbanks decides to proceed with its project.

## CONCLUSION

**[10]** We do not have jurisdiction to review the Corps' approved jurisdictional determination finding that Fairbanks' property contains wetland subject to CWA regulatory jurisdiction. Although the approved jurisdictional determination is the Corps' official, last word about its view of the status of Fairbanks' property, the Corps' view does not impose an obligation, deny a right or fix some legal relationship. Accordingly, it is not final agency action under the APA.

**AFFIRMED.**