NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0122-12T4

NEW JERSEY TRANSIT CORPORATION,
an instrumentality of the
State of New Jersey,

    Plaintiff-Appellant,

v.

EUGENE E. MORI,

    Defendant-Respondent,

and

PNC WEALTH MANAGEMENT and
TOWNSHIP OF NORTH BERGEN,
in the County of Hudson,
a municipal corporation of
the State of New Jersey,

    Defendants.

_____

> APPROVED FOR PUBLICATION
>
> **May 6, 2014**
>
> **APPELLATE DIVISION**

Argued September 11, 2013 — Decided May 6, 2014

Before Judges Fuentes, Simonelli and Fasciale.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1616-09.

Ryan P. Kennedy argued the cause for appellant (Hill Wallack LLP, attorneys; Mr. Kennedy, of counsel and on the briefs).

William J. Ward argued the cause for respondent (Carlin & Ward, P.C., attorneys;

Mr. Ward and James M. Turteltaub, of counsel and on the brief; Scott A. Heiart, on the brief).

The opinion of the court was delivered by

SIMONELLI, J.A.D.

This matter involves the valuation of approximately one acre of vacant land in the Township of North Bergen owned by defendant Eugene E. Mori and acquired by plaintiff New Jersey Transit Corporation (NJ Transit) through condemnation proceedings (the taking area).[1] There is no dispute the taking area contains navigable waters of the United States under the exclusive jurisdiction of the United States Army Corps of Engineers (ACOE).

NJ Transit claimed the taking area was wetlands, as determined by the ACOE, and valued it at $61,000. NJ Transit also argued there was no reasonable probability the ACOE would have granted a private developer the right to construct a two-story self-storage facility by obtaining a regulatory exemption known as a Section 404 permit.[2] According to Mori's expert on land value, a two-story self-storage facility represented the

---

[1] The taking area also included a small slope easement and a temporary construction easement.

[2] Section 404 of the Clean Water Act requires a permit prior to the placement or discharge of dredged and/or fill material into waters of the United States, including wetlands. 33 U.S.C.A. § 1344(a).

property's best and highest use. Mori countered that the taking area was uplands valued at $858,000, and if wetlands, valued at $666,000 because there was a reasonable probability the ACOE would have granted a Section 404 permit for the proposed private development. The jury awarded Mori $425,000 plus interest without indicating whether it valued the taking area as wetlands or uplands.

NJ Transit appeals from the August 2, 2012 order of judgment, and from the denial of its motion in limine to bar Mori's land value expert from testifying that the taking area was not wetlands, or if wetlands, there was a reasonable probability the ACOE would issue a Section 404 permit for the proposed development. As a threshold issue, we conclude the ACOE has exclusive jurisdiction to determine whether the taking area falls under the category of wetlands. The trial court thus erred in submitting this issue to the jury for its determination.

We also conclude it was error for the trial court to submit to the jury the question of whether the ACOE would have granted a Section 404 permit to a private developer without the court first conducting the gate-keeping function the Court ordered in Borough of Saddle River v. 66 East Allendale, LLC, 216 N.J. 115, 119 (2013). Under these circumstances, the trial court was

obligated to conduct an N.J.R.E. 104 pre-trial hearing to determine whether there existed sufficient evidence of a reasonable probability the ACOE would have granted a permit for the proposed private development. Accordingly, we reverse the jury verdict, vacate the judgment, and remand for such further proceedings as may be warranted consistent with the legal principles we discuss herein.

The facts are straightforward. Mori owned approximately fourteen acres of vacant land in the Township of North Bergen adjacent to West Side Avenue and 69th Street. On March 31, 2009, the date of the taking, this property was zoned for industrial and other related development under the local municipal Intermodel A Zone. NJ Transit took approximately one acre of the property for the purpose of constructing a bridge over 69th Street. This was generally known as the 69th Street Bridge Grade Separation Project. The project included the correction of a dangerous at-grade railroad crossing at 69th Street, replacement of the crossing with a bridge spanning the existing railroad tracks, and road and drainage improvements to West Side Avenue, 69th Street and the surrounding area.

On August 15, 1996, the ACOE issued a jurisdictional determination that areas of the property, including the taking area, were wetlands subject to its jurisdiction (the 1996 JD).

A-0122-12T4

The 1996 JD found there were thirty-nine non-assumable waters of the United States/wetland areas located within the proposed project site. Approximately twenty-six wetlands were determined to be above the headwaters, and thirteen, including the taking area, were determined to be below the headwaters. Because NJ Transit's proposed activities on the site involved the discharge of dredged or fill material into the wetland areas, the 1996 JD required NJ transit to obtain a Section 404 permit. The 1996 JD noted the extent of the discharge or fill would determine the level of authorization that would be required. Although the 1996 JD specified it was valid for a period of five years, a jurisdictional determination associated with an issued Section 404 permit is valid until the permit's expiration.[3]

NJ Transit applied for a Section 404 permit for its work in the taking area. On November 22, 2000, the ACOE granted the permit, which imposed several conditions, including that NJ Transit must purchase 2.24 acres of wetland mitigation credits to compensate for the wetlands in the taking area that would be filled during the project's construction. Because NJ Transit

_____

[3] See U.S. Army Corps of Eng'rs, Regulatory Guidance Letter, No. 05-02, "Expiration of Geographic Jurisdictional Determinations of Waters of the United States" (five year rule), (June 14, 2005) available at http://www.usace.army.mil/Portals/2/docs/civilworks/RGLA/rg105-02.pdf.

was a public entity, it was entitled to a discounted 2.3 to 1 ratio of filled wetlands to mitigation credits. A private developer, such as Mori, would have paid a higher ratio. NJ Transit paid $336,000 for the mitigation credits.

In October 2006, Mori asked the ACOE to verify that approximately eleven acres of the property, including the taking area, were not wetlands subject to federal jurisdiction based on Rapanos v. United States, 547 U.S. 715, 126 S. Ct. 2208, 165 L. Ed. 2d 159 (2006). In a March 10, 2008 jurisdictional determination, the ACOE found that Rapanos did not apply, and reverified there were waters of the United States and wetlands on the property that remained subject to its jurisdiction (the 2008 JD). The 2008 JD specified it was valid for a period of five years.

Mori administratively appealed the 2008 JD. On December 1, 2008, the ACOE upheld the 2008 JD and advised Mori he could apply for a Section 404 permit for any proposed work in the jurisdictional area.[4] Mori never applied for a permit.

A "jurisdictional determination" is defined as follows, in pertinent part:

---

[4]  On December 8, 2008, the ACOE issued a revised jurisdictional determination that did not affect the 2008 JD's reverification of wetlands located on the property that were subject to federal jurisdiction and regulation.

> [A] written [ACOE] determination that a wetland . . . is subject to regulatory jurisdiction under Section 404 of the Clean Water Act [33 U.S.C.A. § 1344] or a written determination that a waterbody is subject to regulatory jurisdiction under Section 9 or 10 of the Rivers and Harbors Act of 1899 [33 U.S.C.A. § 401-426p]. Additionally, the term includes a written reverification of expired JDs and a written reverification of JDs where new information has become available that may affect the previously written determination.
>
> [33 C.F.R. § 331.2 (2014).]

A jurisdictional determination "represent[s] the [ACOE's] definitive administrative position that [] property contain[s] wetlands." See Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs, 543 F.3d 586, 591 (9th Cir. 2008), cert. denied, 557 U.S. 919, 129 S. Ct. 2825, 174 L. Ed. 2d 552 (2009). "An approved jurisdictional determination upheld on administrative appeal is [the ACOE's] 'last word'" on whether the property is wetlands subject to the federal regulatory jurisdiction. Id. at 593 (quoting Sierra Club v. U.S. Nuclear Regulatory Comm'n, 825 F.2d 1356, 1362 (9th Cir. 1987)). However, absent an enforcement action, a jurisdictional determination does not constitute a final agency action under the federal Administrative Procedure Act (APA), 5 U.S.C.A. § 704, for purposes of judicial review, Fairbanks, supra, 543 F.3d at 591, 597, and must be appealed pursuant to the administrative

A-0122-12T4

procedures set forth in 33 C.F.R. § 331 (2014). If the jurisdictional determination is upheld on appeal, then the aggrieved party must apply for a Section 404 permit in order to proceed further. Fairbanks, supra, 543 F.3d at 594, 597. The ACOE's decision on a permit application must be appealed pursuant to the administrative procedures set forth in 33 C.F.R. § 331.10 (2014). A final ACOE permit decision is reviewable only in federal court, not state court. 33 C.F.R. §331.6-.10 (2014). As we have acknowledged,

> [O]ur federal system contemplates a policy which generally permits federal administrative agencies to execute their duties free from interference by the state judiciary. . . . Vital among these considerations is the concept of comity, that is, a proper and mutual respect between the federal and state governments. Interference by the state judiciary with respect to a responsibility conferred upon a federal agency with presumed expertise in its assigned field would be inherently abrasive and would tend to erode the mutual respect between governmental entities which is so necessary to the effective operation of our federal system.
>
> [In re Application for a Rental Increase at Zion Towers Apts. (HMFA #2), 344 N.J. Super. 530, 537 (App. Div. 2001) (alteration in original) (citation omitted) (denying review of HUD decision in state court).]

Here, the ACOE twice determined that the taking area was wetlands under its exclusive jurisdiction. The ACOE's determination was dispositive and not reviewable by a federal

court, let alone a state court. Accordingly, it was error for the jury to determine whether the taking area was wetlands or uplands.

Because the taking area was wetlands, it should have been valued as such. The issue, therefore, was whether there was a reasonable probability at the time of the taking that the ACOE would have granted a Section 404 permit for the proposed private development. As noted earlier, our Supreme Court has held that the trial court must determine the issue of reasonable probability prior to the commencement of the trial. See Saddle River, supra, 216 N.J. at 119, 138 (citing State by Comm'r of Transport. v. Caoili, 135 N.J. 252, 265 (1994)).

In Saddle River, the dispute concerned whether there was a reasonable probability that a bulk variance would be granted to permit the defendant's proposed development of the subject property. Id. at 120. Plaintiff Borough of Saddle River filed a motion in limine for an order striking the reports of defendant's expert witnesses as inadmissible net opinion because their opinions on the reasonable probability of a zoning change lacked a proper foundation. Id. at 123. In the alternative, the Borough asked the court to perform its gatekeeping function and conduct a pre-trial N.J.R.E. 104 hearing "to assess whether

there was a reasonable probability of a zoning change for the property." Ibid.

The trial court denied the motion in limine, concluding it could not resolve the issue on the evidence proffered in support of the reasonable probability of a zoning change, and deferring its decision until after presentation of the experts' testimony at trial. Id. at 123-24. The court also denied an N.J.R.E. 104 hearing, concluding it was too time-consuming and Caoili did not require it as gatekeeper to conduct an expansive pre-trial hearing to fully vet the issue. Id. at 124. The court explained it could perform its gatekeeping function during trial. Ibid. At various times during the experts' trial testimony, the court conducted N.J.R.E. 104 hearings and ruled they could continue testifying. Id. at 127-29. Prior to jury deliberations, the court denied the Borough's motion to strike the experts' testimony, and ruled the jury would determine whether there was a reasonable probability of a zoning change for the property that would impact its value. Id. at 132. The jury returned a verdict for the defendant for just compensation. Id. at 133.

Our Supreme Court held that where the issue cannot be resolved on motion based on the evidence proffered in support of the reasonable probability of a zoning change, the court must

conduct a pre-trial N.J.R.E. 104 hearing and "render its determination that there exists the reasonable probability of a zoning change based on the standard that would govern the particular zoning change under consideration." Id. at 142-43.

In this case, because the competing expert reports did not engage in the required analysis completely, the court should have conducted a pre-trial N.J.R.E. 104 hearing and rendered a determination that there existed the reasonable probability the ACOE would have granted a Section 404 permit as of the taking date for the proposed private development. We, thus, reverse and remand for a hearing and, if necessary, a new trial. On remand, the court's determination must be based on the statutes, regulations, and ACOE standards and criteria that would govern a Section 404 permit as of the taking date for the proposed private development. Id. at 143, 146. The court must place on the record the basis for its findings. Id. at 142-43, 146.

Reversed and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0122-12T4