NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 1 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LUTHER KURTZ AND SKYDIVE COASTAL CALIFORNIA, INC. D/B/A PHOENIX AREA SKYDIVING, | No.    20-73440 |
| Petitioners, | FAA Docket No. 16-16-01 |
| v. | |
| FEDERAL AVIATION ADMINISTRATION, | MEMORANDUM[*] |
| Respondent. | |

Petition for Review of an Action of the Federal Aviation Administration
Argued and Submitted January 13, 2022
Pasadena, California

Before:  RAWLINSON and WATFORD, Circuit Judges, and RAKOFF,[**] District Judge.

A skydiving operator and its owner petition for review of a one-paragraph letter from the Federal Aviation Administration ("FAA") to the City of Casa Grande, Arizona ("the City"), which is the "sponsor" of the one-runway Casa Grande Municipal Airport ("CGZ"). The letter, dated September 28, 2020, clarified several

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

conditions the FAA set forth in an August 12, 2020 letter to the City conditionally approving a corrective action plan ("CAP"). The FAA had earlier determined in a "Part 16" complaint proceeding that the City had unjustly discriminated against skydiving in violation of an economic nondiscrimination "assurance" provided to the FAA in connection with the City's receipt of a federal Airport Improvement Program ("AIP") grant. *See* 49 U.S.C. § 47107(a)(1). Specifically, the City had rejected Petitioners' proposal to establish a parachute drop zone ("PDZ") on the existing CGZ airfield. The City's CAP proposes to remedy the noncompliance by establishing a PDZ on city-owned land 2.9 miles from the existing airfield, then formally incorporating the non-contiguous parcel within the airport.

We conclude that neither the September 28, 2020 letter nor the August 12, 2020 letter constituted a final, reviewable order by the FAA.[1] We thus lack subject matter jurisdiction to review the underlying dispute.

1.    The August 12, 2020 letter states that the FAA "conditionally approves the City's CAP and its proposed course of action. The FAA will provide final approval of the City's CAP once the five acre parcel supporting a PDZ becomes Federally

---

[1] We also reject Petitioners' fallback argument that the September 28, 2020 letter is appealable as an amendment to the FAA's final decision on the Part 16 complaint, dated November 19, 2018. The CAP may be different than what Petitioners envisioned when they prevailed in the Part 16 proceeding, but the CAP does not contradict the Part 16 remedial order. To the extent the FAA changes its position on substantive issues, Petitioners may challenge the FAA's decision to accept the remote PDZ as arbitrary and capricious when the FAA issues a pertinent final order.

obligated airport property." The August 12 letter identifies numerous additional steps that the City, the FAA, and other entities must take before the CAP will qualify for final approval.[2] The letter closes by noting that the City's return to eligibility for FAA grants is contingent upon final approval of the PDZ, and thus final resolution of the Part 16 proceeding.

On September 18, 2020, the City responded to the FAA, seeking clarification of 10 additional, enumerated requirements that the August 12 letter had placed on the FAA's conditional approval. The City's September 18 response stated, *inter alia*, that the PDZ was open as of August 15 and that there were, "[a]s of now, . . . no fees associated" with its use. On September 28, 2020, the FAA responded with a one-paragraph letter, clarifying one of the enumerated requirements and stating that it found the City's "responses to the other nine issues to be acceptable."

**3.**     The petition for review was filed pursuant to 49 U.S.C. § 46110(a), which provides this court with subject matter jurisdiction to review an "order" issued by the FAA. Section 46110 incorporates generally applicable finality principles into the

---

[2] The letter also notes additional steps the City may have to take, including an environmental review process, City Council approval, deeding over the land, public hearings and approvals of land use changes and site plans by City boards and commissions, and mitigation of hazards on or near the proposed PDZ. The letter also recognizes that the City will have to update the Airport Master Plan, which the FAA must approve along with an updated Airport Layout Plan. Finally, the August 12 letter notes that the City sought to "procure a consultant to perform analyses to assure that the PDZ location does not impact the existing airspace and flight patterns."

analysis of what counts as an "order" subject to judicial review. *S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989).[3]

**4.**     We conclude that the September 28 and August 12 letters lack finality and therefore are not "order[s]" of the FAA susceptible to judicial review under section 46110. *Bennett v. Spear*, 520 U.S. 154 (1997), sets forth the two-part test for whether an agency action is "final" and thus whether we have subject matter jurisdiction.

"First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* at 177–78. Petitioners dismiss the remaining steps as "ministerial" and argue that the September 28 letter represented the consummation of the FAA's decision-making with respect to the issue upon which they seek review: whether the City could return to compliance with Grant Assurance 22 by establishing a PDZ on a non-contiguous parcel and incorporating it within the formal airport boundary. We disagree. The September 28 letter is a quintessential "interlocutory" document. It merely clarifies certain requirements on the August 12 "conditional approval," which itself acknowledged numerous steps that the City would have to take before the FAA would be in a position to give the CAP final approval and thus to terminate the Part 16 proceeding.

---

[3] Unless otherwise specified, all internal quotation marks, alterations, emphases, elisions, and citations are omitted from all sources cited herein.

The second condition for finality is that the "action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178. An agency action fails this second prong of *Bennett* where it merely "expresse[s] its view of what the law requires of [a regulated entity] without altering or otherwise fixing its legal relationship." *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 594 (9th Cir. 2008). The September 28 letter does not even express a view of what the law requires, let alone alter the City's (or Petitioners') legal relationships. While the August 12 letter expresses the FAA's view that successful incorporation of a remote PDZ facility into the airport would resolve the City's noncompliance with its grant assurances, it does not bind the FAA to accept the remote PDZ, resolve the City's noncompliance, or terminate the Part 16 proceeding and return the City to AIP grant eligibility. The August 12 letter's "expression of views [therefore] lacks the status of law or comparable legal force." *Id.*

**PETITION DENIED**.