## GOOSE CREEK HUNTING CLUB, INC.

v.

## The UNITED STATES.

### No. 11–73.

United States Court of Claims.

June 25, 1975.

William D. Brown, Monroe, La., attorney of record, for plaintiff; Brown & Wicker, Monroe, La., of counsel.

John H. Germeraad, Dallas, Tex., with whom was Asst. Atty. Gen. Wallace H. Johnson, for defendant.

Before COWEN, Chief Judge, and DAVIS and KASHIWA, Judges.

### OPINION

PER CURIAM:

This case comes before the court on plaintiff's motion, filed March 21, 1975,

for judgment pursuant to Rule 141(b), requesting that the court adopt, as the basis for its judgment in this case, the recommended decision of Senior Trial Judge Mastin G. White, filed December 11, 1974, pursuant to Rule 134(h), defendant having filed no notice of intention to except thereto and the time for so filing having expired. Upon consideration thereof, without oral argument, since the court agrees with the trial judge's recommended decision, as hereinafter set forth,* it hereby grants plaintiff's motion and adopts the decision as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover and judgment is entered for plaintiff, with the amount of recovery to be determined pursuant to Rule 131(c).

## OPINION OF TRIAL JUDGE

WHITE, Senior Trial Judge:

The plaintiff asserts in this case a claim against the defendant for the alleged taking by the Government of a permanent flowage easement over approximately 110 acres of land in a much larger parcel of unimproved land, containing a total of 1,119.10 acres, owned by the plaintiff and situated in Franklin Parish, Louisiana. The 110 acres directly involved in the present litigation consist of strips of land which are adjacent to a stream known as Goose Creek and which extend outward from the banks of the creek on either side to an imaginary line where the plaintiff's property reaches the elevation of 34 feet above mean sea level ("m. s. l.").

It is my opinion that the plaintiff is entitled to recover.

The plaintiff is a Louisiana corporation. As its name indicates, the plaintiff was organized, and it is operated, principally as a hunting club. The plaintiff acquired the parcel of unimproved land previously mentioned, containing 1,119.10 acres, on June 28, 1971. The property

was acquired primarily for use in the hunting of deer, wild turkey, doves, and other game.

Goose Creek, which flows generally from north to south, traverses the plaintiff's property and then empties into the Boeuf River at the southern boundary of the property.

The part of Louisiana in which the plaintiff's property is located has a dry season and a wet season. The dry season generally begins in the latter part of June and continues until the latter part of December, while the wet season generally begins in the latter part of December and continues until the latter part of June.

Prior to the events which gave rise to the present litigation, the 110 acres adjacent to Goose Creek that are involved in the present suit could be, and were, used by the plaintiff during the dry season each year for hunting. In addition, the 110 acres were suitable for the grazing of cattle during the dry season. This portion of the property had long been used for such purpose during the dry season each year prior to the acquisition of the property by the plaintiff, and the cattle grazing continued after the plaintiff acquired the property, up until the happening of the events which led to the institution of the present suit. Also, the 110 acres contained some bottom-land types of trees having commercial value.

Goose Creek during the dry season was formerly a small stream in the portion of the plaintiff's property with which the court is concerned. It varied in width from about 8 feet to 10 or 12 feet, except that it was about 40 feet wide near its mouth. There were well-defined banks on either side of the stream bed. During the dry season, the water in the creek was about 1½ feet deep and was at the elevation of about 24 feet m. s. l., on the average, and the banks of the stream extended upward from the water level to a height that

---

* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his report filed December 11, 1974, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

varied from approximately 1 foot to approximately 18 inches.

Extending outward from the creek banks on either side, the ground is almost flat and slopes upward very gradually. The strips of land adjacent to Goose Creek on either side, lying between the creek banks and the imaginary line where the land reaches the elevation of 34 feet m. s. l., and comprising a total of approximately 110 acres, were formerly covered with good grass during the dry season. These strips of land also contained a few willow trees alongside the creek and some bitter pecan and overcup oak trees. The growths of bitter pecan and overcup oak trees generally began at a distance somewhere between 10 yards and 50 yards from the creek banks, so that the spaces closest to the creek were formerly, during the dry season, grassy meadows without trees, except for a few willows alongside the creek. As previously indicated, the 110 acres could formerly be used, and were used, during the dry season for hunting and for the grazing of cattle. Also, the trees there had commercial value.

The 110 acres of land directly involved in the present litigation have never been usable by the plaintiff during the wet season, even prior to the events which gave rise to the present litigation. The plaintiff's property, up to an elevation substantially beyond the 34-foot m. s. l. line marking the outer boundary of the 110 acres, has always been subject to intermittent flooding from Goose Creek during the wet season, and the 110 acres lying below the 34-foot m. s. l. line have generally been covered with water for months at a time each year during the wet season. However, such overflow conditions have not prevented the growth on the 110 acres of some willow, bitter pecan, and overcup oak trees, or the growth of good grass during the dry season, after the disappearance of the overflow waters.

For the 110 acres of land directly involved in this litigation, the annual cycle of being dry part of the year and covered with water part of the year ended on

March 28, 1972. Since that date, the 110 acres have been permanently flooded. The permanent flooding resulted from the construction by the Government, near Jonesville, Louisiana, of a dam and appurtenant lock as part of a major program for the improvement of navigation on the Ouachita-Black river system.

As indicated earlier in this opinion, Goose Creek, after traversing the plaintiff's property from north to south, empties into the Boeuf River at the southern boundary of the property. Approximately 8 miles (in a straight line) downstream from the point where Goose Creek empties into the Boeuf River, the latter empties into the Ouachita River. Then, at Jonesville, Louisiana, which is located approximately 16 miles (in a straight line) downstream from the point where the Boeuf River empties into the Ouachita River, the Ouachita River is joined by the Tensas River and the Little River, and the three streams combine to form the Black River. The Black River empties into the Red River, which, in turn, empties into the Mississippi River.

In the River and Harbor Act of July 14, 1960 (74 Stat. 480, 481), as amended and supplemented, Congress authorized (among other things) a large-scale program for the improvement of navigation on the Ouachita-Black river system, in order to provide a navigation channel at least 9 feet deep and 100 feet wide extending from the mouth of the Black River to Camden, Arkansas, on the Ouachita River. This involved, inter alia, the construction of a dam and appurtenant lock near Jonesville, Louisiana.

■ It is clear from the evidence, as summarized in the findings of fact, that the Ouachita River is a navigable water of the United States. It was used for steamboat traffic long before any channel-deepening or other improvements were made in the river pursuant to congressional authorizations. As the Ouachita River, in its ordinary condition, was susceptible of being used, and was actually used, as a highway for commerce, it is a navigable stream and is subject to the power that is vested in the

Federal Government by the commerce clause of the Constitution (art. I, § 8, cl. 3). *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870). The River and Harbor Act of 1960 was enacted pursuant to this power.

The Jonesville dam-and-lock combination was duly constructed pursuant to the authorization in the Rivers and Harbors Act of 1960, and was placed in operation on March 28, 1972. It created in the Ouachita River a pool which is commonly referred to as the Jonesville Pool and which extends upstream approximately 107 miles to Columbia, Louisiana. In order to provide a navigation channel at least 9 feet deep and 100 feet wide at all points, as provided for in the Rivers and Harbors Act of 1960, the water in the Jonesville Pool is at all times maintained at a minimum elevation of 34 feet m. s. l.

The Boeuf River empties into the Jonesville Pool of the Ouachita River. Because of the elevation of the Jonesville Pool, the water in the Boeuf River, and in its tributary, Goose Creek, has been maintained at a minimum elevation of 34 feet m. s. l. at all times since March 28, 1972. This has resulted in the permanent flooding of the plaintiff's property adjacent to Goose Creek up to the elevation of 34 feet m. s. l., and has permanently deprived the plaintiff of the use of approximately 110 acres of land during the dry season each year for hunting and for the grazing of cattle. In addition, the willow, bitter pecan, and overcup oak trees standing in the permanently flooded area will ultimately be destroyed. These types of trees, which have commercial value but are not as valuable as upland timber, will grow on bottom land which is subject to intermittent flooding, including land which is covered with water for months at a time each year, provided such land is also free of water for at least an approximately equivalent amount of time each year. However, such trees will not survive on land that is permanently flooded.

As previously noted in this opinion, the permanent flooding of 110 acres of the plaintiff's property adjacent to Goose Creek resulted from the Government's action in raising the minimum level of the water in the Ouachita River, a navigable stream, for the purpose of improving navigation in that river, and this, in turn, raised the minimum level of the water in, first, the Boeuf River, a tributary of the Ouachita, and, second, in Goose Creek, a tributary of the Boeuf. From Goose Creek, the water spread out permanently over the plaintiff's property up to the 34-foot m. s. l. line.

Although the record does not contain any evidence regarding the actual use of the Boeuf River as a highway for commerce in its ordinary condition, there is evidence in the record indicating that Congress, in the 1880's, authorized certain improvements to be made on the Boeuf River in aid of navigation. This, by implication, amounted to a determination by the Congress concerning the navigability of the Boeuf River. Such determination must be accepted for the purposes of the present litigation, in the absence of any conflicting evidence.

On the other hand, there is no evidence in the record that would justify a finding of navigability with respect to Goose Creek. A stream is navigable if, in its ordinary condition, trade and travel are, or may be, conducted over it in the customary modes of trade and travel on water. *The Daniel Ball, supra,* 77 U.S. (10 Wall.) at 563, 19 L.Ed. 999. The record in this case is wholly devoid of evidence indicating that Goose Creek was ever used as a highway for commerce in its ordinary condition. Furthermore, the circumstance that, prior to the establishment of the Jonesville Pool in the Ouachita River, the creek was quite narrow at most places and the water in the creek was only about 1½ feet deep, on the average, during the dry season of approximately 6 months each year would militate against an affirmative determination as to the navigability of Goose Creek in its ordinary condition.

The defendant says in its brief that Goose Creek should be regarded as

a navigable stream, but the defendant did not, at the trial of the case, present any evidence upon which to base such a contention. The burden of proof as to the navigability of a stream rests upon the party asserting it. *Iowa-Wisconsin Bridge Co.* v. *United States,* 84 F.Supp. 852, 867, 114 Ct.Cl. 464, 509 (1949), *cert. denied,* 339 U.S. 982, 70 S.Ct. 1020, 94 L.Ed. 1386 (1950). Accordingly, Goose Creek must be regarded as a nonnavigable stream for the purposes of the present case.

■■ Under the commerce clause of the Constitution, the Federal Government has the power to improve navigable waters in the interest of navigation; and if such an improvement on a navigable stream raises the water level in the stream and thereby damages privately owned property situated within the bed of the stream, the Government is not liable for the ensuing damages. *United States* v. *Chicago, Milwaukee, St. Paul & Pacific R.R.,* 312 U.S. 592, 596, 61 S.Ct. 772, 85 L.Ed. 1064 (1941); see *United States* v. *Kansas City Life Insurance Co.,* 339 U.S. 799, 804, 70 S.Ct. 885, 94 L.Ed. 1277 (1950). This is because privately owned property situated within the bed of a navigable stream is always subject to the Government's dominant servitude in the interest of navigation. *United States* v. *Willow River Power Co.,* 324 U.S. 499, 509, 65 S.Ct. 761, 89 L.Ed. 1101 (1945).

■ The bed of a navigable stream is bounded by—and, therefore, the navigational servitude of the Government extends to—the ordinary high-water mark on either side of the stream. *United States* v. *Willow River Power Co., supra,* 324 U.S. at 509, 65 S.Ct. 761.

On the other hand, the navigational servitude of the Government does not extend beyond the beds of navigable streams; and if an action taken by the Government to improve the navigability of a navigable stream raises the water level in the stream and thereby causes it to overflow or otherwise damage property situated outside the bed of such stream, the Government is liable for the ensuing damages. *United States* v. *Kansas City Life Insurance Co., supra,* 339 U.S. at 806–8, 70 S.Ct. 885.

■ It necessarily follows that the 110-acre portion of the plaintiff's property under consideration here is not subject to the Government's navigational servitude covering the beds of the navigable Ouachita and Boeuf Rivers, since such land is situated beyond the beds of those rivers. It also follows that the Government is liable for the permanent flooding of the 110 acres as a result of the Government's program for the improvement of navigation on the Ouachita River.

Perhaps it should be noted that although the 110 acres involved in this litigation are adjacent to Goose Creek, they are situated beyond the bed of the creek. As stated earlier in this opinion, the bed of a stream is the area lying below the ordinary high-water mark on either side of the stream. Judicial decisions indicate that the ordinary high-water mark can be variously defined—*e. g.,* as the line where the water stands sufficiently long to destroy vegetation below it (*Kelley's Creek and Northwestern R.R.* v. *United States,* 100 Ct.Cl. 396, 406 (1943)); or as the line below which the soil is so usually covered by water that it is wrested from vegetation and its value for agricultural purposes destroyed (*Harrison* v. *Fite,* 148 F. 781, 783 (8th Cir. 1906)); or as the line below which the waters have so visibly asserted their dominion that terrestrial plant life ceases to grow and, therefore, the value for agricultural purposes is destroyed (*Borough of Ford City* v. *United States,* 345 F.2d 645, 648 (3rd Cir. 1965), *cert. denied,* 382 U.S. 902, 86 S.Ct. 236, 15 L.Ed.2d 156); or as the line below which the soil is kept practically bare of vegetation by the wash of the waters of the river from year to year in their onward course (*State of Oklahoma* v. *State of Texas,* 260 U.S. 606, 632, 43 S.Ct. 221, 67 L.Ed. 428 (1923)).

■ Under any of the definitions mentioned in the preceding paragraph, the

strips of land adjacent to Goose Creek that are involved in this case must necessarily be regarded as lying above the ordinary high-water mark of Goose Creek. These strips of land, before they were permanently flooded as a result of the Government's action, were covered with good grass during the dry season each year and they contained a few willow trees and some bitter pecan and overcup oak trees—all of which were species of terrestrial, rather than aquatic, plant life. Furthermore, these strips of land were suitable for use during the dry season, and they were actually used, for the grazing of cattle, an agricultural purpose. Therefore, the strips of land involved in this case constituted fast lands rather than part of the bed of Goose Creek; and they would not have been subject to the navigational servitude of the Government even if Goose Creek had been a navigable stream.

For the reasons previously stated in this opinion, the defendant is liable to the plaintiff for the damages sustained by the latter as a result of the permanent flooding of approximately 110 acres of the plaintiff's property adjacent to Goose Creek. As the initial trial was held on the issue of liability only, it will be necessary to determine the amount of the plaintiff's recovery in subsequent proceedings under Rule 131(c).

It might be appropriate to mention, before concluding this opinion, that although the portion of the plaintiff's property above the elevation of 34 feet m. s. l. has not been adversely affected up to the present time by the construction of the Jonesville dam and lock and the establishment of the Jonesville Pool in the Ouachita River, the evidence in the record indicates that the portions of the plaintiff's property lying between the 34-foot m. s. l. line and about the 37-foot m. s. l. line, comprising a total of approximately 49 acres, will probably be permanently damaged hereafter as a result of the permanent flooding of the portions of the property lying below the 34-foot m. s. l. line.

## CONCLUSION OF LAW

Upon the findings of fact and the foregoing opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and judgment is entered to that effect. The amount of the recovery will be determined in subsequent proceedings under Rule 131(c).