Frances L. SWANSON, et al.,
Plaintiffs/Appellants,

v.

UNITED STATES of America, et al.,
Defendants/Appellees.

No. 85–3718.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1986.

Decided May 16, 1986.

Steven L. Herndon, Sandpoint, Idaho, for plaintiffs/appellants.

Carl Strass, Jacques B. Gelin, Robert L. Klarquist, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendants/appellees.

Before WALLACE and THOMPSON, Circuit Judges, and STEPHENS *, District Judge.

STEPHENS, District Judge:

Before 1950, Lake Pend Oreille in Idaho was a navigable water of the United States with an ordinary high water level of 2051 feet above mean sea level. In 1950 Congress passed the Flood Control Act, Pub.L. No. 81–516, 64 Stat. 163, 170 (1950). Under its authority, the United States Army Corps of Engineers constructed the Albeni Falls Dam and Reservoir Project at the west end of Lake Pend Oreille. The purposes of the Project were to provide for flood control, navigation, conservation, recreation and power generation as a part of a comprehensive plan for improvement of the Columbia River system. The new dam caused the lake to rise to a mean high water level of 2062.5 feet.

Frances L. Swanson owns Lots 4 and 5 of the Talache Village Subdivision which are adjacent and riparian to Lake Pend Oreille, and which were flooded by the rise of the lake surface. In August, 1952, the United States filed a Declaration of Taking to obtain a flowage easement for the flooded lands owned by Mrs. Swanson between the old high water mark and the new high water mark.

The Army Corps of Engineers has asserted regulatory jurisdiction over Lake Pend Oreille and has required permits for work performed on or adjacent to the Lake since 1923. In the spring of 1979, Mrs. Swanson built a concrete retaining wall, a pier, a boat lift and a concrete boat launching ramp on her property at a level below 2062.5 feet above mean sea level. On November 23, 1979, the Corps District Engineer wrote to Mrs. Swanson indicating that a Corps inspection had disclosed construction fronting her property that was situated in navigable waters of the United States and that construction was proceeding without a Department of the Army permit in violation of Section 10 of the Rivers and Harbors Appropriation Act, 33 U.S.C. § 403, and Section 404 of the Clean Water Act, 33 U.S.C. § 1344.

Swanson was requested to supply the Corps with information about the construc-

---

* The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

tion. The Corps also issued a "stop work" order on the ground that the construction violated federal law. On January 4, 1980, Swanson responded to the Corps through her attorney requesting a "reasonable amount of time" to gather information. On July 2, 1980, having heard nothing further from Swanson, the District Engineer informed her that the case would be forwarded to the United States Attorney unless the requested information was received within thirty days.

On August 21, 1980, Swanson and the Bonner County Shoreline Property Owners and Taxpayers Protective Association, Inc. filed a complaint for declaratory and injunctive relief against the United States, the Secretary of the Army and officers of the Army Corps of Engineers. The complaint sought a decree that "the waters of Lake Pend Oreille being stored on lands above elevation 2051 [mean sea level] are not now and never have been navigable waters of the United States" subject to Section 10 of the Rivers and Harbor Appropriation Act and Section 404 of the Clean Water Act. The complaint also requested that the defendants be enjoined from maintaining that the waters are navigable waters of the United States and from enforcing or attempting to enforce any public right of access.

Plaintiffs claimed that the federal government's rights are limited by the terms of the flowage easement granted in the Declaration of Taking, and that those terms should be interpreted in accordance with Idaho's real property common law. Swanson argued that she held title to the lands subject to the flowage easement, and so long as the construction did not interfere with the government's ability to exercise its rights under the easement, the United States had no right to regulate the use of her lands. The government argued in response that, based on the commerce clause of the Constitution, the government's power under the Clean Water Act,

the Rivers and Harbors Appropriation Act and the Army Corps of Engineers regulations is independent of the common law of Idaho.

On January 16, 1985, 600 F.Supp. 802, the district court filed its Memorandum Opinion holding that the plaintiffs had exhausted their administrative remedies and that the issue of whether the Corps had regulatory power over the perimeter of the Lake was ripe for judicial review. The court decided that the broad constitutional power of Congress to regulate and control activities affecting navigable waters under the commerce clause eclipsed state common law property rights. The court referred to stipulations that all of Lake Pend Oreille was navigable water before construction of the dam and that, after construction of the dam the waters of the Lake, including those above the old high water mark, are capable of commercial interstate transportation, and determined that the entirety of Lake Pend Oreille, including the newly created outer perimeter waters, continued to be navigable waters subject to Army Corps regulations.[1] Concluding that Swanson's construction was prohibited absent a permit, the court ordered Swanson to submit an application for an after-the-fact permit for the construction within 60 days. This appeal followed the filing of the court's opinion.

Because this case was submitted on stipulated facts, and involves issues of statutory and constitutional interpretation, our review is *de novo*. *See United States v. Anaya*, 779 F.2d 532, 534 (9th Cir.1985).

Appellants contest the government's authority to regulate the land and waters above the former high water mark of Lake Pend Oreille because the Declaration of Taking does not specifically memorialize the granting of a navigational servitude for those fast lands, and because the Declaration fails to state that the public is given the right to navigate the waters flooding the land above the former high water

---

[1]. The district court specifically refrained from deciding whether the government had obtained a public right of access to the Lake area in dispute because it considered the issue not ripe for determination. This ruling is not challenged on appeal.

mark. According to the appellants, since the government artificially raised the level of the lake, it must be bound by the former high water mark in defining the limits of its regulatory power.

Section 10 of the Rivers and Harbors Appropriation Act, 33 U.S.C. § 403, requires that a permit be obtained from the Secretary of the Army, through the Army Corps of Engineers, for any activity which takes place in navigable waters of the United States, or which affects the navigable capacity of such waters. "Navigable waters" are defined as "waters that are subject to the ebb and flow of the tide and or are presently used, or have been used in the past, or may be susceptible for use" in interstate commerce. 33 C.F.R. § 329.4 (1985). Section 404 of the Clean Water Act, 33 U.S.C. § 1344, sets forth a permit requirement for the discharge of dredged and fill material into navigable waters of the United States.

The Secretary of the Army, through the Army Corps of Engineers, is authorized to issue permits which comply with guidelines developed by the Environmental Protection Agency in cooperation with the Secretary of the Army. *See* 33 U.S.C. § 1344(a) and (b). The Army Corps of Engineers regulations provide that federal regulatory jurisdiction and powers of improvement for navigation "extend laterally to the entire water surface and bed of a navigable waterbody, which includes all the land and waters below the ordinary high water mark." 33 C.F.R. § 329.11(a). The navigational servitude of the government cannot, however, extend past the bed of an inland body of water. *Goose Creek Hunting Club, Inc. v. United States*, 207 Ct.Cl. 323, 518 F.2d 579, 583 (1975).

The district court determined that the newly created outer perimeter waters of the Lake are navigable waters subject to regulation, relying on the Supreme Court's decision in *Philadelphia Co. v. Stimson*, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912). In that case the owner of an island in the Ohio River challenged the fixation of harbor lines by the Secretary of War under

Section 11 of the Rivers and Harbors Appropriation Act, 33 U.S.C. § 404, because they encroached on the boundaries of its land as they were defined under state law. The island was upstream from a federal dam which had raised the level of the river and submerged part of the island. The owner had planned to reclaim the lost land by building a wharf. The Secretary of War had fixed the harbor lines on the river using the new high water mark. The landowner's wharf would have crossed the new lines. The Secretary threatened to prosecute the island owner if it proceeded with the proposed construction. The landowner filed an action contending that it was prevented from using its property, which was being taken without just compensation.

The Supreme Court found for the government and explained its reasoning as follows:

Nor is the authority of Congress limited to so much of the water of the river as flows over the bed of forty years ago. The alterations produced in the course of years by the action of the water do not restrict the exercise of Federal control in the regulation of commerce. Its bed may vary and its banks may change, but the Federal power remains paramount over the stream, and this control may not be defeated by the action of the State in restricting the public right of navigation within the river's ancient lines. The public right of navigation follows the stream ... and the authority of Congress goes with it. (Citation omitted).

*Id.* at 634–35, 32 S.Ct. at 350. Federal regulatory power was determined to extend to the artificially raised high water mark even though the landowner held title defined by state law as extending to the old, natural high water mark. *Id.* at 638, 32 S.Ct. at 351; *see also United States v. DeFelice*, 641 F.2d 1169, 1173–74 (5th Cir.) *cert. denied* 454 U.S. 940, 102 S.Ct. 474, 70 L.Ed.2d 247 (1981) (Corps has jurisdiction over artificial, privately owned canal.)

Appellants claim that *Phildelphia Co.* is factually distinguishable from this case because erosion of the island took over forty

years, whereas the flooding and loss of Mrs. Swanson's land was sudden. This difference does not affect the nature of the government's power to regulate. *See Kaiser Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (affirming determination that artificially dredged pond connected to the Pacific Ocean became a navigable water, subject to Corps regulation, even though not subject to a public right of access); *Oregon v. Riverfront Protection Association,* 672 F.2d 792, 795, n. 2 (9th Cir.1982) (discussing *Kaiser Aetna* ).

The government's navigational servitude over the waters above the old high water mark of Lake Pend Oreille does not arise from title obtained by the Declaration of Taking. It derives from the commerce clause of the United States Constitution. The Supreme Court has clarified the nature of the government's interest in a navigational servitude as follows:

> The interest of the United States in the flow of a navigable stream originates in the Commerce Clause. That Clause speaks in terms of power, not of property. But the power is a dominant one which can be asserted to the exclusion of any competing or conflicting one.

*United States v. Twin City Power Co.,* 350 U.S. 222, 224–25, 76 S.Ct. 259, 260–61, 100 L.Ed. 240, *reh'g. denied,* 350 U.S. 1009, 76 S.Ct. 648, 100 L.Ed. 871 (1956). Appellant's real property interest in the flooded lands is subject to the government's paramount regulatory powers.

Appellants also contend that the circumstances surrounding the Albeni Falls Dam Project, including representations made by government officials in the past, do not indicate that the government intended to acquire a greater interest in the flooded perimeter of the Lake than that which is expressly set forth in the Declaration of Taking. This argument is unpersuasive for, as stated in *Creppel v. United States Army Corps of Engineers,* 670 F.2d 564,

571 (5th Cir.1982), "[a]n agency is not forever bound by its prior determinations for they are neither congressional directives nor scriptural admonitions."

The district court's order requiring Swanson to file an after-the-fact permit application for the construction on her land is AFFIRMED.