Dated: March 18, 2014.

**DUARTE NURSERY, INC., a California Corporation; and John Duarte, an individual, Plaintiffs,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.**

**No. CIV. S–13–2095 LKK/DAD.**

United States District Court, E.D. California.

Signed April 22, 2014.

Filed April 23, 2014.

Anthony L. Francois, Pacific Legal Foundation, Sacramento, CA, for Plaintiffs.

Andrew J. Doyle, John Thomas H. Do, Govt., United States Department of Justice, Washington, DC, Kristin B. Peer, Deputy Attorney General, Natural Resources Law Section, Office of the Attorney General, Sacramento, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiffs own the property that is the subject of this action, and operate it as a

nursery growing and selling nursery stock to farmers and others. Complaint (ECF No. 1) ¶ 7.

On February 25, 2013, defendant U.S. Army Corps of Engineers ("Corps") wrote to plaintiff, stating that it had "determined that you have discharged dredged or fill material into ... waters of the United States, without a [required] Department of the Army (DA) permit," in violation of Section 404, 33 U.S.C. § 1344, of the Clean Water Act ("the Act"). *See* Exhibit A (ECF No. 1–1) of the Complaint.[1] The Corps "directed" plaintiff to "cease and desist all work in waters of the United States until this violation is resolved." Exh. A at 2.

The Corps went on to warn plaintiffs of the "[p]otential enforcement actions" that could ensue, and attached an "extract of the law" as an Appendix. *Id.; Id.,* Appendix A (ECF No. 1–1) at 4. Two of the enforcement actions the Corps warned of were "fines" and "imprisonment." Exh. A at 2. In apparent support of these warnings, the Corps cited, in its "extract of the law," 33 U.S.C. § 1319(c)(1)(A) and (c)(2)(A), both of which refer to "fine[s]" and "imprisonment" for violations of 33 U.S.C. § 1311. *See* Appendix A at 4.

The third enforcement action the Corps warned of was "penalties." Exh. A at 2. In apparent support of this warning, the Corps' "extract of the law" cited 33 U.S.C. § 1319(d), which provides for "penalties" for violation of "any order issued by the Administrator," as well as for any violations of 33 U.S.C. § 1311. *See* Appendix A at 4.[2]

The Corps did not explain in the CDO or the "extract" what law authorized it to "direct" plaintiffs to "cease and desist" their activities in the first place. However, it is undisputed that the Corps issued this document pursuant to its authority to formally notify a person that he is in violation of the Clean Water Act. *See* 33 C.F.R. § 326.3(c). The applicable regulations instruct the Corps to issue the notification "in the form of a *cease and desist order prohibiting* any further work" until the violation is resolved. *Id.* (emphases added).[3] Since the regulations instruct the Corps to issue this notification in the form of a "cease and desist order," the court will henceforth refer to it as such.[4]

On March 21, 2013, plaintiffs asked the Corps to set forth the factual basis of its determination. Complaint ¶ 52. The Corps provided a "partial response" on April 18, 2013.[5] *Id.,* ¶ 53.

---

1. Exhibits to the Complaint are a part of the Complaint for all purposes. Fed.R.Civ.P. 10(c).

2. In fact, the CDO is not an "order issued by the Administrator," and plaintiffs do not challenge the Corps' assertion that there are no legal consequences—specifically, no "penalties"—for failing to obey the CDO. Plaintiffs do not assert that they were misled by the Corps' inclusion of the "penalty" citation. Nevertheless, it seems strange that the Corps would include such apparently misleading language in its CDO and "extract."

3. The regulation provides:
   Once the district engineer has determined that a violation exists, he should take ap-

propriate steps to notify the responsible parties.
(1) If the violation involves a project that is not complete, the district engineer's notification should be in the form of a cease and desist order prohibiting any further work pending resolution of the violation in accordance with the procedures contained in this part.
33 C.F.R. § 326.3(c).

4. The U.S. refers to the document as a "cease and desist letter." Plaintiffs refer to it as a "cease and desist order."

5. Neither side has provided either plaintiffs' request or the response.

On April 23, 2013, California's Central Valley Regional Water Quality Control Board ("Board") issued a "Notice of Violation" ("NoV") to plaintiffs. *See* Exhibit B (ECF No. 1–2) of the Complaint. The NoV asserts that plaintiffs "are in violation" of Section 301, 33 U.S.C. § 1311, of the Act, in that they were "discharging dredged or fill materials" into waters of the United States, including Coyote Creek, without the required permit from the Corps. Exh. B at 2. It also states that plaintiffs are in violation of Section 402 of the Act, 33 U.S.C. § 1342, and Section 13376 of the California Water Code, "for discharging pollutants to Coyote Creek without a permit." *Id.* The NoV does not order plaintiffs to stop their violations, but it does notify them that the cited violations subject them to civil liability, and tells them to submit a plan for mitigation of the violation. *Id.*

In October 2013, plaintiffs filed this suit against the Corps, and against seven officers of the Board in their official capacities. Six of the individuals are "members" of the Board, and one is its Executive Officer. The individual defendants are sued "under the doctrine set forth in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)" and *Cardenas v. Anzai*, 311 F.3d 929, 934–38 (9th Cir.2002).[6]

The plaintiffs allege that the federal and state defendants deprived them of property or property rights protected by the Due Process clauses of the Fifth and Fourteenth Amendments. Specifically, because of the federal cease and desist order ("CDO"), and the state NoV, plaintiffs left their wheat crop unattended, losing $50,000 in planting costs. Second, with those documents in effect, plaintiffs would

have to disclose them to potential buyers, and thus the defendants have effectively placed a lien on plaintiffs' property. Plaintiffs further allege that defendants acted in contravention of plaintiffs' Fifth and Fourteenth Amendment Due Process rights by issuing the CDO and the NoV without affording plaintiffs a hearing before or after issuing the documents.

For remedies, plaintiffs ask for (1) declaratory judgments that the failure to provide hearings is unconstitutional, (2) an injunction against further enforcement proceedings based upon the CDO and NoV, (3) an injunction requiring defendants to notify those to whom the CDO and NoV were sent, that they are invalid, and (4) a declaratory judgment that the regulations at 33 C.F.R. Part 326 are unconstitutional.

The Corps moves to dismiss the claims against it (Claims 1, 2 and 5), on the grounds that (1) the claims are not ripe for judicial review, and (2) plaintiffs have failed to state a claim for violation of the Fifth Amendment.

The State defendants move to dismiss the claims against them (Claims 3 and 4), on the grounds that the claims (1) are not ripe for judicial review, and (2) are barred by Eleventh Amendment sovereign immunity.

For the reasons that follow, the court will deny the Army Corps' motion to dismiss, and grant the State's.

## I. STANDARDS

### A. Dismissal for Lack of Federal Jurisdiction.

██ It is well established that the party seeking to invoke the jurisdiction of the

---

**6.** "Under the *Ex parte Young* doctrine, a plaintiff may maintain a suit for *prospective relief* against a state official in his official capacity, when that suit seeks to correct an

ongoing violation of the Constitution or federal law." *Cardenas,* 311 F.3d at 934–35 (emphasis in text).

federal court has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Assoc. of Medical Colleges v. United States,* 217 F.3d 770, 778–779 (9th Cir.2000). On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

When a party brings a facial attack to subject matter jurisdiction, that party contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004). In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. *See Sea Vessel Inc. v. Reyes,* 23 F.3d 345, 347 (11th Cir.1994), *Osborn v. United States,* 918 F.2d 724, 729 n. 6 (8th Cir.1990); see also 2–12 Moore's Federal Practice—Civil § 12.30 (2009). The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Savage v. Glendale Union High Sch. Dist. No. 205,* 343 F.3d 1036, 1039 n. 1 (9th Cir.2003), *Miranda v. Reno,* 238 F.3d 1156, 1157 n. 1 (9th Cir.2001). Nonetheless, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack. *Safe Air for Everyone,* 373 F.3d at 1039.

### B. Dismissal for Failure To State a Claim.

A dismissal motion under Fed.R.Civ.P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements. Under Fed.R.Civ.P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant " 'fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[7]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. *Iqbal* and *Twombly* therefore prescribe a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

---

**7.** Citing *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955, *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

"Plausibility," as it is used in *Twombly* and *Iqbal*, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the nonconclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).[8] A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988).

## II. ARMY CORPS OF ENGINEERS

Plaintiffs allege that this court may exercise jurisdiction over their Due Process claims against the Corps pursuant to (1) Section 10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, which provides for judicial review of agency actions, and (2) 28 U.S.C. § 1331, which provides for jurisdiction over claims arising under the Constitution and laws of the United States. *See* Complaint ¶ 1. The Corps moves to dismiss based upon its assertion that the claims against it are not ripe for judicial review. *See* Corps Notice of Motion (ECF No. 10) at 1. In the alternative, the Corps moves to dismiss plaintiffs' claims for failure to state a claim.

There are three distinct jurisdictional issues the court must therefore address. First, whether a federal statute confers subject matter jurisdiction on this court for these claims. Even where there is federal jurisdiction, since this is a suit against an agency of the United States, the court must consider, Second, whether the United States has waived its sovereign immunity for these claims.[9] If so, the court must consider, Third, whether the claims are ripe for judicial review.

### A. Federal Jurisdiction.

Plaintiffs allege that the issuance of the Corps' cease and desist order violates their rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Plaintiffs also allege that 33 C.F.R. § 326.3(c), as applied to them, violates the

8. *Twombly* imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), although it did not overrule that case outright. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 968 (9th Cir.2009) (the *Twombly* Court "cautioned that it was not outright overruling *Conley* ...," although it was retiring the "no set of facts" language from *Conley* ). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. *See Starr v. Baca*, 652 F.3d 1202, 1215 (9th Cir.2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam), with the seemingly "higher pleading standard" in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *Twombly* and *Iqbal*), *cert. denied*, —— U.S. ——, 132 S.Ct. 2101, 182 L.Ed.2d 882 (2012). *See also Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir.2011) (applying the "no set of facts" standard to a Section 1983 case).

9. Section 1331 "grants district courts original jurisdiction over 'all civil actions arising under the Constitution, laws or treaties of the United States,' but it does not waive sovereign immunity." *U.S. v. Park Place Associates, Ltd.*, 563 F.3d 907, 923–24 (9th Cir.2009) (citing *Hughes v. United States*, 953 F.2d 531, 539 n. 5 (9th Cir.1992)).

Due Process Clause. This court plainly has jurisdiction to hear and adjudicate these claims, pursuant to the general grant of federal court jurisdiction set forth at 28 U.S.C. § 1331. *See, e.g., Bell v. Hood,* 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ("Thus, the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the district court has jurisdiction"); *Verizon Maryland, Inc. v. Public Service Com'n of Maryland,* 535 U.S. 635, 643, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) ("Verizon's claim thus falls within 28 U.S.C. § 1331's general grant of jurisdiction," because its right to recover "will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another") (citations and internal quotation marks omitted); *U.S. v. Park Place Associates, Ltd.,* 563 F.3d 907, 923–24 (9th Cir.2009) ("For example, 28 U.S.C. § 1331 grants district courts original jurisdiction over 'all civil actions arising under the Constitution, laws or treaties of the United States'").

### B. Waiver of Sovereign Immunity.

" 'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.' " *Department of Army v. Blue Fox, Inc.,* 525 U.S. 255, 260, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (quoting *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). Section 702 (Section 10(a) of the APA)

provides that waiver of sovereign immunity for suits seeking relief "other than money damages." *See, e.g., Bowen v. Massachusetts,* 487 U.S. 879, 891–892, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) ("the 1976 amendment to § 702 was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendment"). It provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States....

5 U.S.C. § 702. Here, plaintiffs seek injunctive and declaratory relief for an alleged legal wrong inflicted by the Corps' issuance of the CDO.[10] Accordingly, the claims against the Corps are covered by the sovereign immunity waiver.

### C. Ripeness.

The Corps argues that this case is not "ripe" for judicial review. "Whether a claim is ripe generally turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Richardson v. City*

---

**10.** In addition, plaintiffs must be challenging "agency action" for their claims to be within the waiver of sovereign immunity. *See Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). "Agency action" is defined to include "the whole or a part of an agency rule, *order,* license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551 (emphasis added); *Lujan,* 497 U.S. at 882, 110 S.Ct. 3177. Plaintiffs identify the cease and desist order as the agency action they are challenging. Defendants do not challenge this identification, and the court finds that issuance of the cease and desist order is "agency action" within the meaning of the waiver statute.

*and County of Honolulu,* 124 F.3d 1150, 1160 (9th Cir.1997) (citing *PG & E v. State Energy Resources Conserv. & Devel. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)), *cert. denied,* 525 U.S. 871, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998). As the Corps points out, "[t]he 'central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Richardson,* 124 F.3d at 1150 (quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532 at 112 (2d ed.1984)).

The Corps argues that plaintiffs' claims have not " 'matured sufficiently to warrant judicial intervention,' " because the CDO "imposes no legal obligations or liability on its own [and thus] Plaintiffs suffer no cognizable injury from its issuance." Memorandum of Points and Authorities in Support of Federal Defendant's Motion To Dismiss Complaint ("Corps Motion") (ECF No. 10–1) at 14. Specifically, the CDO is not enforceable on its own, there are no separate penalties for violating it, and it can only be enforced through a separate enforcement action. Rather, the Corps argues, the CDO "is merely a mechanism to notify an alleged violator of the legal obligations imposed by the CWA, the Corps belief that those obligations have been violated, and of the potential consequences of such violations." *Id.*

■ The court cannot agree. Even assuming that the CDO does not impose any legal "obligations" or "liabilities," the Corps' argument underestimates the force of a command from the United States or its agency, the Army Corps of Engineers, and the injury it can cause. If the Corps,

instead of issuing the CDO, had burned plaintiffs' nursery to the ground in an effort to protect the waters of the U.S., plaintiffs surely would have suffered an injury, even though the Corps still would not have imposed any legal "obligation" or "liability" on plaintiffs.

Having been commanded by the U.S. Government to stop their activities, plaintiffs reasonably believed that they were *required* to stop their farming activities, and thereby lost their crop. Plaintiffs reasonably interpreted the CDO to be an order issued by the United States Government, not merely a suggested course of conduct, nor a request for a voluntary cessation of activities. The Corps asserts that plaintiffs did not have to obey the order it issued. If plaintiffs were free to ignore an unconditional command of the U.S. Government, or its agency, the Corps, then the CDO should have said so.[11] Conversely, if the CDO were simply a "notification" to plaintiffs, then it should have said so, rather than clothing itself as an "order" which carried with it the authority to "prohibit" plaintiffs from continuing their activities. *See* 33 C.F.R. § 326.1(c).

In its main brief, the Corps cites four cases in support of its view that the CDO had no legal effect and therefore is not yet subject to judicial review. None of them are applicable to this case. In *Fairbanks North Star Borough v. U.S. Army Corps of Engineers,* 543 F.3d 586 (9th Cir.2008), *cert. denied,* 557 U.S. 919, 129 S.Ct. 2825, 174 L.Ed.2d 552 (2009), plaintiffs sought "judicial review of a Corps' 'approved jurisdictional determination,' which is a written, formal statement of the agency's view that Fairbanks' property contained waters of the United States and would be subject

---

**11.** In essence, the government argues that although it (figuratively) held a gun to plaintiff's head and ordered him to stop farming, plaintiff should have relied on the unstated fact that the gun could not be fired.

to regulation under the CWA." The case did not involve any order "directing" anyone to "cease and desist" from any activity, or "prohibiting" any activity, as the CDO in this case does. Nor did plaintiff challenge the Corps' action as unconstitutional. *Fairbanks* accordingly considered only whether the jurisdictional determination was "final agency action" under the APA, and determined that it was not. *Id.*, 543 F.3d at 591.[12] "Final agency action" is not at issue in this case.[13]

*Route 26 Land Dev. Ass'n v. U.S.*, 753 F.Supp. 532 (D.Del.1990), *aff'd mem.*, 961 F.2d 1568 (3rd Cir.1992), the second case, was also a challenge to the Corps' jurisdictional "designation of two reaches of the Santa Cruz River in Arizona as 'traditional navigable waters.'" This case too, turned on whether the determination was "final agency action" within the meaning of the APA. The district court held that it was not, and therefore declined review. As noted, this case does not turn on the existence of "final agency action," and thus *Route 26* provides no guidance.

The two cases the government cites as specifically precluding judicial review of the Corps' cease and desist orders were decided under 5 U.S.C. § 704, not Section 702, and rule as they do because the CDO does not constitute "final agency action." *See Banks v. Page*, 768 F.Supp. 809 (S.D.Fla.1991), *vacated mem.*, 963 F.2d 385 (11th Cir.1992); *Howell v. U.S. Army Corps of Engineers*, 794 F.Supp. 1072 (D.N.M.1992). Neither of these cases involved a federal constitutional challenge to agency action. In this case, "final agency action" is not required for the court to address agency action that allegedly caused plaintiff to suffer a federal constitutional injury.[14]

The only case the court was able to find that addressed whether issuance of a Corps cease and desist order presented a "ripe" controversy (outside the context of Section 704) is *Swanson v. U.S.*, 600 F.Supp. 802 (D.Idaho 1985), *aff'd*, 789 F.2d 1368 (9th Cir.1986). In *Swanson*, as here, plaintiff received a letter from the Corps that "directed" her to "desist from any further work." Plaintiff there filed suit immediately, citing "federal jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201." The district court found that the matter was ripe for judicial review:

> In reference to the first dispute, the court has little difficulty finding that the issues raised are ripe for judicial deter-

12. *Fairbanks* determined that "the Corps' issuance of an approved jurisdictional determination finding that Fairbanks' property contained waters of the United States did not constitute final agency action under the APA for purposes of judicial review." *Id.*, 543 F.3d at 591. Although the jurisdictional determination was "final," it did not determine any rights or obligations, nor would any "legal consequences" flow from it. *Id.*, at 593. Specifically, the determination "does not itself command Fairbanks to do or forbear from anything; as a bare statement of the agency's opinion, it can be neither the subject of 'immediate compliance' nor of defiance." *Id.*, at 594–95. In contrast, the CDO at issue here plainly commands plaintiff to forbear from doing something.

13. "Final agency action" is an issue for cases brought under 5 U.S.C. § 704, not, as here, Section 702.

14. In any event, the latter two cases are not persuasive. The cited district court decision in *Banks* was "vacated" by the Eleventh Circuit, and therefore it is not clear that it should be cited at all. *See Banks v. Page*, 963 F.2d 385 (11th Cir.1992), *vacating mem.*, 768 F.Supp. 809 (S.D.Fla.1991). As for *Howell*, a central premise of its reasoning was that the Clean Water Act precluded review of "compliance" orders. However the Supreme Court has since held that compliance orders *are* subject to judicial review. *Sackett v. EPA*, 566 U.S. ——, 132 S.Ct. 1367, 182 L.Ed.2d 367 (2012).

mination. Swanson has constructed improvements on a portion of the lake in dispute and defendants have asserted their regulatory authority in the form of the "stop work" letter sent to Swanson. These facts give rise to an actual and present controversy concerning the authority of the Corps to regulate the outer perimeter of Lake Pend Oreille. Since defendants have actually asserted their jurisdiction and Plaintiff Swanson has opposed it, the matter is ripe for judicial determination.

*Swanson,* 600 F.Supp. at 806.

In its Reply brief, and at oral argument, the Corps cited *Guatay Christian Fellowship v. County of San Diego,* 670 F.3d 957 (9th Cir.2011), *cert. denied,* —— U.S. ——, 133 S.Ct. 423, 184 L.Ed.2d 255 (2012), in support of its ripeness argument. As the Corps points out, the Court there did opine on the lack of consequences for not obeying a cease and desist order issued by the County:

> In this case, although strongly worded, the County's NOV and cease-and-desist order did not themselves deprive the Church of any interests. The County would have had to bring an enforcement action in court in order to actually enforce the zoning regulations—and it in fact notified the Church of that in its May 2008 letter. Without bringing the Church to court, the County had no power to, for example, padlock the building doors or make arrests, nor did it take any such action. Had the County brought the Church to court, the Church would have received notice, an opportunity to be heard, and an opportunity to present evidence; at the very least, we would have a record upon which to make a judgment about whether the Church had received sufficient process.

*Guatay,* 670 F.3d at 984.

Simply put, *Guatay* does not control this case. The critical distinguishing facts underlying *Guatay* are that (1) plaintiffs there could have sought a permit allowing them to keep their church where it was, and (2) they had available an administrative appeal of the cease and desist order. *See Guatay,* 670 F.3d at 965 ("The Church did not attempt to obtain a Use Permit before doing so [filing the lawsuit]. Nor did it attempt to avail itself of the appeals process, as provided in the County's code").

In this case, unlike the situation in *Guatay,* nothing in the Corps' CDO notified plaintiffs that the Corps could not take action based upon the CDO alone, for example, shut down the farm entirely. Moreover, nothing in the Corps' CDO suggests that plaintiffs had the option of seeking an after-the-fact permit. To the contrary, the CDO is clear that the only course open to plaintiffs is "[p]rompt voluntary restoration of the site." CDO at 2. The CDO also makes no mention of any appeals process.

The Corps' regulations, meanwhile, do permit after-the-fact permits, but only "[f]ollowing the completion of any required initial corrective measures." 33 C.F.R. § 326.3(e)(1). Whether this means that plaintiffs must promptly restore the site before they can seek a permit is not clear. *Guatay* certainly shows the Corps how its CDO procedure could be modified to comply with Due Process standards. As that process was not used in this case, however, *Guatay* does not help the Corps.

This court does not doubt that the Corps needs the flexibility to "notify" landowners that they are in violation of the law, without having to go to court first. Had they issued a "notification," they would be in the same position as the State defendants, and could now argue successfully that the matter was not ripe for judicial review.

However, the Corps did not "notify" plaintiffs they were operating in violation of the law, it *commanded* plaintiffs to stop their activities. Since the Corps did so without granting plaintiffs any ability to challenge this command, either before or after issuance of the CDO—other than requiring plaintiffs to wait around indefinitely to see if the Corps would file an enforcement action—plaintiffs are entitled to judicial review now.

The Corps asserts that plaintiffs have another administrative option they should be required to exhaust before proceeding to court. Specifically, the Corps suggests that plaintiffs can wait until the Corps files an enforcement action. That is entirely inadequate, as plaintiffs are being deprived now of the right to farm their land for an indefinite period, with no assurance that an enforcement action will ever be filed, thus completely depriving them of the opportunity to challenge the CDO.

Plaintiffs' claims are ripe for judicial review.

### D. Due Process.

In order to state a claim under the Due Process clause of the Fifth Amendment to the U.S. Constitution, plaintiff must first allege facts showing that he has a "liberty" or "property" interest at stake. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment").

■ Plaintiffs allege a property and/or liberty interest in the land they own, and their right to use it for wheat farming. Complaint ¶¶ 45–47. The government does not contest this assertion.

Plaintiffs must then allege that they were deprived of this interest by some decision or action of the federal government. *Id.* As discussed above, the action alleged is that of issuing the cease and desist order. The Corps argues that the CDO did not deprive plaintiffs of their property or legal interest because the CDO:

> is merely a mechanism to notify an alleged violator of the legal obligations imposed by the CWA, the Corps' belief that those obligations have been violated, and of the potential consequences of such violations.
>
> The Corps' direction to comply with the requirements of the Act is only enforceable through a subsequent enforcement action. Because the Corps' letter imposes no legal obligations or liability on its own, Plaintiffs suffer no cognizable injury from its issuance.

U.S. Motion To Dismiss, ECF No. 10–1 at 14.

As discussed above, the Corps disagrees with the plain words of its own CDO. The Corps ordered plaintiffs to stop their activities, and plaintiffs complied with the order, reasonably believing that they were not free to ignore a command of the United States Government, or its agency, the Army Corps of Engineers. In so complying, plaintiffs lost their crop, and to the degree they are still complying, they have lost their right to farm or use their land.

The Corps' purported mechanisms for challenging its actions are, as discussed above, inadequate. Forcing plaintiffs to wait idly about while the Corps decides whether to bring an enforcement action has the effect of continuing to deprive plaintiffs of the use of their property, without end. Forcing plaintiffs to file for an after-the-fact permit makes no sense, as plaintiffs assert that they have the right to conduct their activities without the permit,

the CDO gave plaintiffs no hint that this was available, and the after-the-fact permit process appears to require plaintiffs to do exactly what this lawsuit seeks to avoid, namely, forcing them to restore the site to the Corps' satisfaction.

Plaintiffs have stated a claim under the Due Process Clause.

## III. STATE DEFENDANTS

Plaintiffs sue officials of the Board in their official capacities. The sole violation alleged is that the Board failed to provide a hearing either before or after issuing the NoV.

Plaintiffs allege that this court may exercise jurisdiction over their Due Process claims against the State pursuant to (1) 28 U.S.C. § 1331, which provides for jurisdiction over claims arising under the Constitution and laws of the United States, and the doctrine set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits state officials to be sued to enjoin constitutional violations. *See* Complaint ¶¶ 1 & 10–16.

The State moves to dismiss plaintiffs' claims as barred by sovereign immunity, and because they are not ripe for judicial review. *See* State Notice of Motion (ECF No. 9) at 2.

### A. Sovereign Immunity.

■■■ "A state's sovereign immunity from suit in federal court normally extends to suits against its officers in their official capacities." *Cardenas v. Anzai,* 311 F.3d 929, 934 (9th Cir.2002). This action against California officers in their official capacities is therefore barred by sovereign immunity unless an exception applies. Plaintiffs assert that they may sue under the exception articulated in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "Under the *Ex parte*

*Young* doctrine, a plaintiff may maintain a suit for prospective relief against a state official in his official capacity, when that suit seeks to correct an ongoing violation of the Constitution or federal law." *Cardenas,* 311 F.3d at 934–35.

■■■ The Board argues that plaintiffs seek retrospective relief, not prospective relief, and therefore the claim is barred by *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Green v. Mansour,* 474 U.S. 64, 68–69, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). The Board is incorrect. The NoV is still in effect, and whatever allegedly unconstitutional mischief it is causing, it is still causing. Plaintiffs seek to correct that on-going violation. Nothing in the cited cases says otherwise.

*Coeur d'Alene* denied plaintiffs' claim on sovereign immunity grounds in the "particular and special circumstances" where Idaho's sovereignty was threatened by the lawsuit. It appears to have no application to this lawsuit. *Edelman* denied plaintiffs' claims because they required the retroactive payment of funds from the state's treasury. Here, the only requested relief is prospective injunctive relief. *Green* clarified that it was the "compensatory or deterrence interests" of retrospective relief that failed to overcome the state's sovereign immunity. The relief sought here is not compensatory or deterrent, it only seeks to put a halt to allegedly unconstitutional conduct.

Sovereign immunity does not bar the suit against the Board officials.

### B. Ripeness.

■■■ Plaintiffs assert that their receipt of the NoV caused them to abandon their crop and therefore they were deprived of their property rights. There are at least

two problems with this assertion. First, in their Opposition, plaintiffs concede that they abandoned the crops because of their receipt of the *federal* CDO, not the state NoV. Plaintiffs' Combined Opposition to Federal Defendant's and State Defendants' Motions To Dismiss Complaint ("Pl. Oppo.") (ECF No. 15) at 19 ("[i]t is evident from the allegations of the Complaint and the text of the Order [the CDO] that the receipt of this document caused Duarte to abandon the wheat crop and their farming activities on the Property, depriving them of their property interests as a result"). Thus, plaintiffs' interpretation of their own complaint indicates that only the federal action deprived them of their rights, not the Board's.

Second, even if the court were to ignore plaintiffs' concession, and accept that the NoV caused plaintiffs to abandon their crop, plaintiffs have cited no authority that their own decision to abandon their crop is a deprivation of their property rights under the Due Process clause. Plaintiffs are attempting to convert their own conduct into state action. To prevail on the Due Process claim, plaintiffs must show that the *Board* or its officials deprived them of their property without due process.

Plaintiffs identify nothing in the NoV or the statute or regulations governing the NoV that impaired their property, stopped them from farming, or had any other legal consequences. Instead, plaintiffs assert that the very existence of the NoV impairs their property rights, and analogizes the NoV to an *ex parte* attachment or lien against the property, citing *Connecticut v. Doehr,* 501 U.S. 1, 12, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), and *Tri–State Dev. v. Johnston,* 160 F.3d 528, 531 (9th Cir.1998). Pl. Oppo. at 16.

Plaintiffs do not offer any explanation for why this analogy is valid. They do not argue that the NoV is a lien, attachment or encumbrance of any kind such as would impair their *ability* to alienate the property. Instead, they state that they would have to *disclose* the NoV in the event they tried to sell or lease the property. The cases plaintiffs cite, however, address legal *impairments* to the seller's right to his property, not the possibility that the market value of the property might be affected by required disclosures.

Plaintiffs buttress their argument by asserting that the NoV "depriv[es] Duarte of the vested right to use the Property in accordance with its zoning," namely wheat farming. ECF No. 15 at 18. But it does no such thing. The NoV does not divest plaintiffs of anything, nor does it order them to stop doing anything.

The order *notifies* plaintiffs of the Board's view that they are in violation of the law. The only thing it commands is that plaintiffs submit a plan to mitigate the impacts of the discharges. However, (1) nothing in the letter threatens any consequences for failure to submit such a plan, (2) plaintiffs identify nothing in the law or regulations that authorizes any such consequences, and (3) plaintiffs do not allege that in fact any such consequences have occurred.

In short, the Board has done nothing to plaintiffs yet. The lawsuit against the Board is not ripe for adjudication in federal court.

## IV. CONCLUSION

For the reasons stated above, the court orders as follows:

1. The Corps' motion to dismiss for lack of federal jurisdiction, is **DENIED;**

2. The Corps' motion to dismiss for failure to state a claim is **DENIED;** and

3. The State defendants' motion to dismiss for lack of federal jurisdiction, is

**GRANTED.** This lawsuit is hereby **DISMISSED** without prejudice, as to defendants Longley, Moffitt, Constantino, Meraz, Ramirez, Schneider and Creedon, because the matter is not yet ripe for judicial review.

IT IS SO ORDERED.